**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MICHAEL BRIGGS,

    Plaintiff,

v.

                                  No.

THE UNIVERSITY OF NEW MEXICO, a public
university, THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO, GARNETT
STOKES, individually and in her official capacity,
PAUL B. ROTH,  individually and in his official
capacity,  DOROTHY ANDERSON, individually
and in her official capacity,  LAURA VELE
BUCHS, individually and in her official capacity,
and KEVIN GICK, individually and in his official
capacity,

                                  Jury Trial Demanded

    Defendants.

**COMPLAINT FOR DUE PROCESS VIOLATIONS, VIOLATION OF
TITLE IX, UNLAWFUL DISCRIMINATION, DEFAMATION, AND
OTHER CLAIMS ARISING FROM UNM'S WRONGFUL
TERMINATION OF PLAINTIFF BASED ON FALSE ALLEGATIONS OF
SEXUAL ASSAULT**

    Plaintiff Michael Briggs, by and through counsel, Jackson Loman Stanford & Downey,

P.C. (Travis G. Jackson, Meghan Stanford, and Sarah K. Downey), brings this complaint against

Defendants The University of New Mexico ("UNM"), The Board of Regents of the University of

New Mexico ("BORUNM"), UNM President Garnett Stokes, Dr. Paul D. Roth, Dorothy

Anderson, Laura Vele Buchs, and Kevin Gick (collectively the "Defendants"), and states as

follows:

### INTRODUCTION

    1.    Plaintiff Michael Briggs was fired from his long-standing job at the University of

New Mexico ("UNM") based solely on a false report of sexual assault that allegedly occurred

off-campus and which UNM acknowledged was completely unrelated to his work.  These false claims were investigated by law enforcement, and Plaintiff was never arrested nor accused of any crime.  The District Attorney declined to prosecute due to a lack of evidence.  Facing heavy criticism from the United States Department of Justice and the public about UNM's mishandling of on-campus sexual assault investigations, UNM conducted a biased investigation against the Plaintiff designed to advocate for the accuser and find Plaintiff "guilty" of sexual misconduct.

2.      UNM conducted no hearing before it fired the Plaintiff.  UNM withheld the names of the anonymous witnesses used against Plaintiff to fire him.  UNM gave him no opportunity to confront or cross-examine any witness, including his accuser.  UNM purposely ignored exculpatory evidence, including negative DNA and drug tests, as well as the intentional destruction of exculptary communications by Plaintiff's accuser.  UNM conspired with Plaintiff's accuser to attempt to fabricate "other victims" who never existed.  UNM destroyed and deleted the email account of its own investigator while the disciplinary process was ongoing, despite believing that litigation was likely, receiving a written demand to preserve those emails, and in direct violation of New Mexico law and UNM policy.

3.      After UNM initially found "No Policy Violation," UNM's newly appointed President conducted an *ex parte* proceeding which overruled that decision.  Plaintiff's accuser appealed UNM's "No Policy Violation" through an undisclosed letter to UNM's President. Plaintiff was not provided the letter, nor notified of the factual or legal grounds for the appeal, nor allowed any opportunity to respond to it.  Without offering any due process for Plaintiff, UNM's President entered an *ex parte* order overturning the decision of "No Policy Violation," and effectively directed that Plaintiff be terminated.

4.      Acting on the direction of UNM's President, top UNM officials, including UNM's Vice President of Human Resources, improperly intervened in the discipline process and pressured Plaintiff's supervisors to fire him.  UNM policy requires that an employee's direct supervisor independently decide and impose discipline.  Plaintiff's direct supervisor recused himself from the disciplinary process after UNM's Vice President of Human Resources and other officials refused his request to provide him with the evidence they claimed supported a termination based on sexual misconduct.  UNM's refusal to provide the decision-maker with the supporting evidence was in direct violation of UNM's policies and practices, and part and parcel of process designed to influence the outcome so that Plaintiff was fired regardless of the evidence.

5.      Plaintiff appealed UNM's decision to terminate him, and more than a year later, UNM conducted a Peer Review Hearing in which UNM expressly placed the burden of proof on Plaintiff to prove that he did not sexually assault his accuser – Plaintiff was "guilty until proven innocent."  UNM had no established protocols for conducting such a hearing, and instead manufactured an ad-hoc appeal process designed to prevent Plaintiff from fairly defending himself.  UNM simply made up arbitrary rules as it went along.  Despite the prosecutorial nature of the Peer Review Hearing, the seriousness of the charge (sexual assault), and UNM's placement of the burden of proof on Plaintiff, UNM denied Plaintiff's request to be represented his lawyer.  UNM required that Plaintiff present exhibits and cross-examine witnesses himself.  UNM denied Plaintiff's request to cross-examine his accuser and her husband.  UNM lawyers improperly acted as advisor to the Peer Review Panel and as prosecutor against Plaintiff.  UNM repeatedly interfered with Plaintiff's presentation, including criticizing, cutting off, and laughing at his questions.

3

6.     During the Peer Review Hearing, UNM presented and relied on evidence that had never been considered before Plaintiff's termination.  UNM called on an entirely different set of witnesses from the anonymous witnesses relied on its original investigation.  Plaintiff had no power to compel witnesses to appear.  UNM refused his requests to interview witnesses in advance of the Peer Review Hearing.  UNM refused and ignored Plaintiff's request for witnesses to appear at the hearing – including the UNM investigator who made the findings against Plaintiff.  UNM actively interfered with Plaintiff's ability to discover exculpatory evidence. UNM refused Plaintiff's request to video-tape these grossly unfair proceedings to prevent the public and this Court from observing UNM's due process failures.

7.     Over the course of more than three years, UNM conducted a deeply flawed persecution of Plaintiff that deprived him of due process in violation of both the New Mexico Constitution (Art. II, § 18) and the Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983) and was biased against him and discriminatory because of his gender (male) in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq., and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 20009(e) *et seq.* Defendants' conduct also supports state law claims under theories of: (a) defamation; (b) tortious interference with existing and prospective business relations; (c) breach of implied employment contract and the inherent duty of good faith and fair dealing; (d) negligent hiring, supervision, and investigation; and (e) spoliation of evidence based on UNM's unlawful deletion of its investigator's email account.

8.     Plaintiff affirmatively states that he has never engaged in any alleged "sexual misconduct," that the allegations leveled against him by Defendants were false, and that there was

never any credible evidence sufficient to support the decision to terminate his long-standing employment by UNM.

## JURISDICTION AND VENUE

9.      The University of New Mexico ("UNM") is a state university that provides educational services to students within the State of New Mexico, for which it receives state and federal funding.

10.      The health care related education, research, and clinical programs and services offered by UNM and/or provided in UNM's facilities are collectively referred to as the UNM Health Sciences Center ("UNMHSC"), which is a recognized component of UNM.

11.      Plaintiff was a long-standing, exemplary employee at UNMHSC with no prior complaints of any kind.  UNM fired the Plaintiff on August 28, 2018, based on a single, false accusation of sexual assault.

12.      Plaintiff had a protected property right as an employee of a public university.

13.      The UNM Health Sciences Center is a "medical facility," "hospital," and/or "like facility" as defined by NMSA § 41-4-9, and thus "[t]he immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for damages resulting from  . . . property damage caused by the negligence of public employees . . . ."  NMSA § 41-4-9.

14.      Defendant UNM and the UNMHSC are managed by the Board of the Regents of the University of New Mexico ("BORUNM").  Defendant BORUNM have the power to sue and be sued, and have the power and duty to enact laws, rules, and regulations for the government of UNM and UNMHSC. *See* NMSA 1978, §21-7-1, *et seq.*

15.      Defendant BORUNM have general supervisory control of UNM and UNMHSC, including control of and responsibility for the actions and inactions of UNM's employees, officers and agents acting in their official capacity for UNM and UNMHSC.

5

16.     Defendant BORUNM, individually and as a body corporate, were acting within the scope of their employment, and under color of state law, at all times relevant to this Complaint.

17.     Defendant Garnett Stokes became the President of UNM on or about March 1, 2018.  President Stokes is the executive officer charged with enforcing UNM's policies and procedure. President Stokes became directly involved in the termination of the Plaintiff when she conducted an *ex parte* appeal and overruled the finding by UNM's Office of Equal Opportunity that there was no "No Policy Violation" by Plaintiff.  President Stokes issued her *ex parte* order without giving plaintiff notice of the appeal or any opportunity to respond to it.  Upon information and belief, President Stokes is a resident of Bernalillo County in the State of New Mexico.

18.     Defendant Dr. Paul B. Roth was at all relevant times the Executive Vice President and Chancellor for UNMHSC.  Dr. Roth is the UNM official that ultimately terminated Plaintiff's employment.  UNM's policies provide that Plaintiff's supervisor Plaintiff's supervisor (the Executive Vice Chancellor) should be responsible for imposing discipline.  Plaintiff's supervisor recused himself because high level officials, including Defendant Dorothy Anderson, refused to provide him with the evidence claimed to support UNM's findings against Plaintiff, in violation of UNM's normal policies and practices.  Dr. Roth was then designated to impose discipline, and directed by other high level UNM officers to terminate Plaintiff's employment.  Upon information and belief, Dr. Roth is a resident of Bernalillo County in the State of New Mexico.

19.     Defendant Dorothy Anderson was at all relevant times UNM's Vice President for Human Resources.  Defendant Anderson unilaterally and improperly inserted herself into

UNM's investigation and disciplinary processes against Plaintiff to make sure that he was fired regardless of the evidence.  Defendant Anderson inserted herself into the process despite direction from the United States Department of Justice (DOJ) that such interference violates Title IX of the Education Amendments of 1972.  Upon information and belief, Ms. Anderson is a resident of Bernalillo County in the State of New Mexico.

20.     Defendant Laura Vele Buchs was formerly employed at UNM's Office of Equal Opportunity ("UNM/OEO").  Defendant Buchs was the UNM employee assigned to investigate the false claim of sexual assault made against the Plaintiff.   Defendant Buchs was not qualified to investigate sexual assault.  Defendant Buchs acted as an advocate for Plaintiff's accuser. Defendant Buchs repeatedly and purposely ignored exculpatory evidence and witnesses.  UNM destroyed and deleted Ms. Buchs' entire email account during the disciplinary process against Plaintiff.  Ms. Buch's email account was deleted after high level UNM officials acknowledging that litigation was likely, and despite an express written demand by Plaintiff to preserve her communications, and in direct violation of New Mexico law and UNM policies requiring the retention of her emails.  Upon information and belief, Ms. Buchs is a resident of the State of Illinois.

21.     Defendant Kevin Gick was at all relevant times an attorney within UNM's Office of University Counsel, and he was specifically designated as the UNM/OEO "liaison". Defendant Gick participated directly in Defendant Buchs' investigation of the accuser's false claims, and in UNM/OEO's findings of sexual misconduct against the Plaintiff.  Defendant Gick later purported to act as an objective "advisor" to a Peer Review panel convened to consider Plaintiff's appeal of UNM/OEO's investigation and findings.  Mr. Gick refused to acknowledge his obvious conflict of interest, and rejected demands that he recuse himself from the

proceedings.  Upon information and belief, Mr. Gick steered the Peer Review panel to confirm the UNM/OEO investigation and findings that he participated in.  Upon information and belief, Mr. Gick is a resident of Bernalillo County in the State of New Mexico.

22.     In purporting to investigate a false claim of sexual assault that allegedly occurred off-campus and indisputably had nothing to do with Plaintiff's employment at UNM, Defendant Buchs, Defendant Gick, and UNM/OEO improperly and unlawfully acted as a *de facto* law enforcement agency, and thus the "[t]he immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury . . . or property damage resulting from . . . . libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico . . . ."  NMSA § 41-4-12.

23.     The above-named individuals are sued both in their official and individual capacities.

24.     All acts or omissions which are the subject of Plaintiff's Complaint occurred in Bernalillo County, New Mexico.

25.     Jurisdiction is proper in this Court because this Complaint presents claims raising a federal question under 28 U.S.C. § 1331, and because the Complaint raises state and common law claims which fall within this Court's supplemental jurisdiction according to 28 U.S.C. § 1367.

26.     This Court has personal jurisdiction over Plaintiff and Defendants.

27.     Venue is proper in the District Court of New Mexico under 28 U.S.C. §1391 because all of the Defendants are or were residents of the State in which this judicial district is

located and because a substantial part of the events or omissions giving rise to Plaintiff's claims

occurred in this judicial district.

### FACTS COMMON TO ALL COUNTS

**A.      Plaintiff's Employment at UNM**

28.      Plaintiff was an exemplary UNM employee for approximately twelve years.

29.      Plaintiff received multiple promotions during his employment with UNM,

including a promotion to Executive Research Operations Officer at UNM's Health Services

Center, a position he successfully held until his unlawful and discriminatory termination.

30.      Plaintiff received only positive performance evaluations and was never

disciplined, nor did anyone at UNM ever complain about his conduct.

31.       Despite his exemplary record, UNM terminated Plaintiff's employment based

solely on a false report of off-campus conduct that was completely unrelated to his work at

UNM.

**B.      UNM Under Pressure to Advocate for Alleged Victims of Sexual Assault.**

32.      In the months leading to the false accusations against Plaintiff, Defendant UNM

had been accused of failing to adequately investigate and address on-campus sexual assault.

UNM was under pressure from the public and by The Department of Justice ("DOJ") to prove its

commitment to "rooting out" sexual assault and meeting its obligations under Title IX.

33.      Defendant UNM receives federal funding and financial assistance within the

meaning of 20 U.S.C. 1681(a) and is otherwise subject to Title IX.  Defendant UNM maintains

an Office of Equal Opportunity ("OEO") pursuant to Title IX, and is supposed to have a trained

OEO Investigator and Title IX Coordinator.

34.      The Department of Justice ("DOJ") shares authority with the the United States'

Department of Education's Office for Civil Rights ("OCR") for enforcing Title IX, and may

initiate an investigation or compliance review of schools; if a voluntary resolution cannot be reached, the DOJ may initiate litigation.

35.     If DOJ and OCR found that UNM violated Title IX, UNM would be at risk of losing substantial federal funding.

36.     During the months leading up to the false report against Plaintiff, there was substantial criticism from the public and in the press that UNM failed to take seriously complaints of female students alleging on-campus sexual assault by male students.  In fact, the Department of Justice launched an investigation on December 4, 2014, based on multiple complaints about Defendants' handling of reports of students of sexual harassment and sexual assault.

37.     In April 2016, the Justice Department issued a report criticizing UNM's handling of reports *by students* of sexual assault.[1]  The Department had received "complaints from multiple *students* alleging that UNM did not adequately respond to their reports of sexual assault."  The Justice Department conducted an investigation of UNM under Title IV of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972, both of which prohibit sex discrimination in education programs.  To avoid losing federal funding, the Justice Department required that UNM take certain measures, including to "[a]dequately investigate or respond to all allegations *by students* who have alleged sexual assault or sexual harassment."

38.     DOJ's report also notified Defendants of several deficiencies in the compliance with federal law, including but not limited to: Defendants' confusing "labyrinth" of outdated and often conflicting policies and procedures as to sexual assault; Defendants' minimal and

---

[1] *Justice Department Releases Investigative Findings on University of New Mexico's Response to Sexual Assault Allegations*, https://www.justice.gov/opa/pr/justice-department-releases-investigative-findings-university-new-mexico-s-response-sexual (last visited July 2, 2020).

inconsistent training of University officials; Defendants' wholly inadequate staffing of UNM's Office of Equal Opportunity (OEO) and training on how to conduct sexual misconduct investigations and adjudications,  which resulted in inconsistent and unreliable determinations of credibility during investigations; Defendants' failure to ensure impartial resolution of Title IX complaints; and Defendants' ineffective evidence gathering, among other deficiencies.

39.     On October 17, 2016, UNM announced that it had "entered into an agreement with the U.S. Department of Justice to refine UNM's policies regarding sexual harassment *on campus*, which includes sexual violence such as assault."

40.      Only nine days later, on October 26, 2016, a former UNM employee falsely accused Plaintiff of sexual assault.

**C.     False Report of Sexual Assault**

41.     Plaintiff's accuser was not a UNM student – she was a UNM employee, but not under supervision or direction of the Plaintiff.

42.     The underlying sexual encounter did not occur anywhere near UNM's campus.  It was undisputed that Plaintiff and his accuser had met off campus at a bar, and that the accuser had then voluntarily driven to Plaintiff's home where the two continued to drink beer and spent several hours alone.

43.     It was undisputed that their mutual decision to meet at Plaintiff's home had nothing whatsoever to do with their respective jobs at UNM.

44.     Plaintiff did not sexually assault anyone, and has consistently and adamantly denied this false claim against him.

D.      **Biased UNM Investigation**

45.     UNM's did not conduct a prompt or fair investigation of the complaint against

Plaintiff.

46.     Plaintiff's accuser made the false report to UNM/OEO on October 26, 2019.

47.     UNM did not notify Plaintiff of the false report until January 5, 2017 – nearly

three months after the alleged assault.

48.     UNM made no attempt to promptly collect or preserve any physical evidence.

49.     UNM made no attempt to promptly obtain interview potential witnesses.

50.     UNM instead expressly decided to allow law enforcement to conduct its

investigation of the allegations against Plaintiff.

51.     UNM then abandoned its reliance on law enforcement when authorities declined

to arrest, charge, or prosecute Plaintiff for lack of evidence.

52.     UNM did not complete its investigation until December 2017 – roughly fourteen

(14) months after the alleged sexual assault.

53.     The investigation was conducted by a single person, Laura Vele Buchs, the "EEO

Compliance Specialist," who had no serious experience investigating sexual assault.

54.     Defendant Buchs and her conclusions were never independently reviewed or

tested by anyone at UNM or within UNM's Police Department (UNMPD).  In fact, UNMPD was

not involved in UNM's investigation of this claim of sexual assault at all.

55.     During her investigation, Defendant Buchs acted as an advocate for Plaintiff's

accuser and conducted the investigation in way designed to find that Plaintiff was had engaged in

sexual misconduct.

56.     Defendant UNM maintains that its UNM/OEO investigators are trained in investigating allegations of sexual violence and misconduct; however, the UNM/OEO investigators responsible for investigating complaints of sexual misconduct, including Defendant Bucks, were provided only intermittent, inconsistent, minimal, and wholly insufficient training on how to conduct investigations and adjudications, and specifically how to collect and analyze witness statements and other evidence, which resulted in inadequate, unreliable and biased investigations and in inconsistent as well as unreliable determinations of credibility.  Not only did UNM/OEO fail to provide adequate training, but upon information and belief, UNM's EEO Specialists are pressured to just get investigations "done".

57.     Defendant UNM, acting through Defendants, gives unbridled discretion to under- and/or improperly trained and over-extended investigators to determine whether a student has engaged in sexual misconduct, and such investigators act as the fact finder, the jury, and the judge during the process of adjudicating sexual misconduct complaints.

58.     During the investigation, Plaintiff was never given an opportunity to be privy to the investigative process, to rebut or counter the evidence, to examine or otherwise question any witnesses, or to present Plaintiff's story in front of an impartial panel.

59.     Plaintiff was never provided with any actual witness statements.

60.     No witness was asked to sign a sworn statement.

61.     No witness was given an opportunity to review his or her statement.

62.     No witness statement was recorded.

63.     No questions were presented to the witness in writing.

64.     No witness was given a copy or summary of his or her statement.

65.     Inconsistencies in witness statements were never analyzed or followed up on.

66.     The witness interviews were not complete or thorough and were not designed to elicit information that would bring forth the truth, but were intended to elicit information against the Plaintiff.

67.     Plaintiff was summarily determined to be "not credible."

68.     Defendant Buchs interpreted evidence, made credibility determinations, and manufactured unreasonable inferences to support only that result.

69.     As a whole, Defendants failed to provide Plaintiff a fair, impartial investigation, failed to follow their own policies in "investigating" the allegations of sexual misconduct against him, failed to afford Plaintiff due process in disciplining him based upon the faulty investigation, and failed to follow their own policies in imposing sanctions upon him.

70.     From the outset Defendants railroaded Plaintiff in order to find him guilty of the accused sexual misconduct, regardless of the lack of evidence or merit in the allegations, because of Defendants' gender bias against male employees, Defendants' self-interest in their reputation amid scrutiny and pressure from the federal government, and Defendants' financial interests in receiving federal funding.

71.     Upon information and belief, Defendants were aware of the flawed investigatory and disciplinary process, but failed or refused to implement adequate policies and procedures.

72.     Upon information and belief, Defendants were aware that UNM employees, acting in their official capacity, were violating the due process rights of male UNM students and employees, including Plaintiff, but recklessly failed or refused to properly supervise or train such employees.

**E.     Inadequate and Changing Notice of Policy Violations**

73.     In addition to delaying and conducting a biased investigation, UNM's notice to Plaintiff of the alleged policy violations was deficient and ever-changing.

74.     UNM's initial notice provided that the only "Applicable University Policy" was University Policy ("UAP") 2740: "Sexual Violence and Sexual Misconduct."

75.     For the first fourteen (14) months of its investigation, UNM did not provide any notice that Plaintiff was the subject of any claim of sexual harassment, nor did UNM cite UAP 2730 ("Sexual Harassment") as an "Applicable University Policy."

76.     UNM's attempt to revise its policies in order to stack the deck against Plaintiff and similarly situated men accused of sexual assault violates his due process rights and demonstrates clear gender-based bias.

77.     UNM's sexual conduct and harassment policy violations are inherently biased against male employees accused of sexual misconduct. Not only are such employees provided less process than employees accused of other misconduct, UNM's inadequate process assumes at every stage that the accused male employee engaged in sexual misconduct and violated UNM policy, while simultaneously preventing accused male employees from having a full and fair opportunity to defend against serious charges of sexual misconduct.

**F.     UNM/OEO Determination of No Policy Violation**

78.     On December 4, 2018, Defendant Buchs notified Plaintiff that she had completed her investigation and issued a Preliminary Letter of Determination (PLOD). The PLOD stated for the first time that UNM was also investigating "[c]omplainant's assertions of sexual harassment" under a different policy, UAP 2720 ("Equal Opportunity, Non-Discrimination and Affirmative Action").

79.     Applying the lowest legal standard of proof (preponderance of evidence), and based only on her limited and biased investigation, Defendant Buchs found that Plaintiff "more likely than not" subjected his accuser to unwelcome sexual activity, which was severe in nature.

80.     Importantly, while Defendant Buchs also determined that "there is no objective evidence of unreasonable interference in [the accuser's] work performance and/or environment." In other words, UNM/OEO found that there was "NO POLICY VIOLATION" under UAP 2720 and 2740 because there was "not sufficient evidence to show more likely than not [Plaintiff] subjected [the accuser] to unwanted conduct of a sexual nature that unreasonably interfered with [the accuser's] work performance and work environment . . . ."

81.     On December 12, 2017, UNM/OEO confirmed its preliminary determination in its Final Letter of  Determination ("FLOD").

82.     UNM/OEO gave both parties five (5) business days, or until December 17 ,2017, to appeal the FLOD.

83.     Because OEO found no policy violation and recommended that UNM close the file and take no further action, there was no reason for Plaintiff to appeal.

**G.     *Ex Parte* Appeal to UNM President**

84.     Unbeknownst to Plaintiff, his accuser filed an untimely *ex parte* appeal to UNM's President on January 2, 2018.  Plaintiff was not provided any notice of the appeal, or a copy of it, nor any opportunity to respond to it, nor any opportunity to make a cross-appeal of the finding of sexual misconduct, if necessary.

85.     Plaintiff was provided no information about the substance of the appeal until after UNM's new President, Defendant Stokes, abruptly reversed UNM/OEO's finding of "NO POLICY VIOLATION" on March 29, 2018.

86. Accepting all of the factual and legal arguments made in the *ex parte* appeal by Plaintiff's accuser, President Stokes instructed UNM/OEO to reverse its earlier conclusion and find that Respondent violated not only UPA Nos. 2720 and 2740, but also UAP 2730.

87. Plaintiff had never been notified of any potential violation of UAP 2730, much less been given any opportunity to present evidence against it.  Moreover, during the pendency of UNM's investigation, UNM had re-written, added, and removed several policies, and there was never any clear notice of which UAP Plaintiff was accused of violating, or even what version.

88. Under the 2016 policies in existence at the time of his accuser's report, the evidence must show that the alleged sexual harassment was so severe and pervasive that it meaningfully altered the terms and conditions of the accuser's employment—not only from her perspective but based on an objective standard.

89. During UNM's investigation and the *ex parte* appeal, UNM revised its policies to lessen this standard, and then applied new and revised policies to Plaintiff's misconduct *ex post facto*.

90. It was fundamentally unfair for UNM to alter both the nature of the allegations against Plaintiff and the scope of its investigation without informing him or allowing him the opportunity to address the evolving nature of the investigation.

91. It was fundamentally unfair for UNM to application new policies and expanded definitions of harassment after the alleged incident was reported, after the investigation was concluded, and without notice.

92. Plaintiff was deprived of the opportunity to submit evidence and identify witnesses who might support his defense against these new and additional claims.

93.     Upon information and belief, UNM and the individual Defendants, acting in their official capacity, have designed policies and procedures to find male employees accused of sexual misconduct "guilty" —regardless of the lack of evidence or the merit of the allegations—in order to create the appearance of and supporting statistics for reports to the Department of Education and Department of Justice representing that UNM is in compliance with Title IX.

94.     Plaintiff requested the opportunity to appeal the President's ex parte order reversing UNM/OEO's decision, but UNM did not allow an appeal.

95.     Instead, on June 6, 2018, UNM issued a Notice of Contemplated Action for Discharge (the "NCA").

96.     UNM ultimately terminated Plaintiff's employment on August 27, 2018

## H.     Post-Termination Appeal: "Guilty Unless Proven Innocent"

97.     On September 10, 2018, Plaintiff appealed UNM's decision to terminate him.

98.     More than a year later, in September 2019, UNM conducted a Peer Review Hearing in which UNM expressly placed the burden of proof on Plaintiff to prove that he did not sexually assault his accuser – Plaintiff was "guilty until proven innocent."

99.     UNM had no established protocols for conducting a Peer Review Hearing, and instead manufactured an ad-hoc appeal process designed to prevent Plaintiff from fairly defending himself.  UNM simply made up arbitrary rules as it went along.

100.    Despite the prosecutorial nature of the Peer Review Hearing, the seriousness of the charge (sexual assault), and UNM's placement of the burden of proof on Plaintiff, UNM denied Plaintiff's request to be represented his lawyer.

101.    UNM required that Plaintiff present exhibits and cross-examine witnesses himself.  UNM denied Plaintiff's request to cross-examine his accuser and her husband.

102.    UNM lawyers improperly acted as advisor to the Peer Review Panel and as prosecutor against Plaintiff.

103.    UNM repeatedly interfered with Plaintiff's presentation, including criticizing, cutting off, and laughing at his questions.

104.    During the Peer Review Hearing, UNM presented and relied on evidence that had never been considered before Plaintiff's termination.

105.    UNM called on an entirely different set of witnesses from the anonymous witnesses relied on its original investigation.

106.    Plaintiff had no power to compel witnesses to appear.

107.    UNM refused his requests to interview witnesses in advance of the Peer Review Hearing.

108.    UNM refused and ignored Plaintiff's request for witnesses to appear at the hearing – including the UNM investigator who made the findings against Plaintiff, Defendant Buchs.

109.    UNM actively interfered with Plaintiff's ability to discover exculpatory evidence.

110.    UNM refused Plaintiff's request to video-tape these grossly unfair proceedings to prevent the public and this Court from observing UNM's due process failures.

111.    The UNM Peer Review Panel predictably rejected Plaintiff's appeal of UNM's decision to terminate his employment.

## COUNT I: DUE PROCESS VIOLATION

112.    Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if set forth in full herein.

113.    Article II, Section 18 of the New Mexico Constitution provides, in relevant part, that "[n]o person shall be deprived of life, liberty or property without due process of law[.]"

114.    The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

115.    As an employee of a public university, Plaintiff has a protected property interest in his continued employment with the University of New Mexico, of which he cannot be deprived by the state without due process of law.

116.    Plaintiff has a protected right to due process of law in UNM's employee disciplinary proceedings, particularly where, as here, Plaintiff's employment was terminated based on a single incident arising from a false accusation of sexual assault.

117.    Plaintiff has a protected liberty interest in his good name, reputation, honor, and integrity, of which he cannot be deprived by the state without due process.

118.     Plaintiff has a protected property interest in pursuing employment opportunities and occupational liberty, of which he cannot be deprived by the state without due process.

119.    Plaintiff was entitled to process commensurate with the seriousness of the allegations and potential discipline, sanctions, and repercussions he was facing, especially when the allegations are of sexual misconduct, which will result in a severe sanction – the termination of his longstanding employment – that will have lifelong ramifications for Plaintiff.

120.    Plaintiff's long-standing employment at the University of New Mexico was terminated on August 27, 2018, without UNM affording him basic due process.

121.    Defendant Buchs was the sole investigator, fact-finder and decision maker.

122.    Defendant Buchs conducted an investigation that was biased, purposely incomplete, reckless and grossly negligent.

123.    Defendants agreed to, approved, and ratified this unconstitutional conduct.

124.    Defendants created a policy, pattern and practice which deprived Plaintiff of a fair

and impartial investigation, decision, or appeal, and further failed to ensure training in the legal and appropriate methods of investigating allegations of sexual misconduct.

125. At all times relevant, Plaintiff had a clearly established right to due process of law which a reasonable public official would have known.

126. Defendants have a established a custom and practice of disregarding and violating the constitutional rights of male students and employees accused of sexual assault.

127. Defendants have a established a custom and practice of failing to afford basic due process protections to male students and employees accused of sexual misconduct.

128. 92. Defendants' actions and inactions described above were fundamentally unfair to Plaintiff, unduly prone to false findings of sexual misconduct, and were arbitrary and capricious.

129. Defendants' conduct was so egregious as to shock the conscience.

130. There is no rational relationship between Plaintiff's actual conduct and the discipline imposed on him by Defendants.

131. Defendants have no sufficient justification for abridging Plaintiff's due process rights.

132. Defendants, acting under color of state law and in concert with one another, by their conduct showed intentional, outrageous and reckless disregard for Plaintiff's constitutional rights.

133. In depriving Plaintiff of his protected due process rights, including his liberty interest in his good name, reputation, honor and integrity, the opportunity to pursue employment and his protected property interest in his continued employment Defendants violated Plaintiff's

right to due process of law in violation of Article II, Section 18 of the New Mexico Constitution
and of the Fourteenth Amendment to the United States Constitution.

134.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has
suffered injury and damages, to include, but not limited to: termination of his long-standing
employment and advancement opportunities at the University of New Mexico; damage to
Plaintiff's personal and professional reputation and standing in the community; loss of future
employment and advancement opportunities; a permanent finding of sexual misconduct in
Plaintiff's personnel records; mental and emotional distress; and humiliation and embarrassment.

135.    As a result of the foregoing, Plaintiff is entitled to relief against Defendants as
requested in this Complaint.

## COUNT II: VIOLATION OF
## TITLE IX 20 U.S.C. § 1681

136.    Plaintiff incorporates by reference all allegations contained in the foregoing
paragraphs as if set forth in full herein.

137.    Title IX of the Education Amendments of 1972 prohibits discrimination on the
basis of sex in a school's education program or activity, including all of a school's operations.

138.    Defendant UNM is an educational institution receiving Federal financial
assistance under Title IX, 20 U.S.C. § 1681.

139.    Defendant UNM has promulgated its Title IX Policy, as well as its related sexual
harassment, retaliation, and Office of Equal Opportunity policies, among others, to comply with
Title IX and its implementing regulations, 34 C.F.R. 106.1 *et seq.*, and with the Clery Act and its
implementing regulations, 34 C.F.R. 668.1 *et seq.*

140.    Title IX and its regulations require schools, including Defendant UNM, to adopt
and publish grievance procedures providing for the prompt and equitable resolution of

22

complaints that allege any action prohibited by Title IX, including sexual harassment, assault, and misconduct. The procedures adopted by a school must not only ensure the Title IX rights of the complainant, but also accord due process to both parties involved.

141.    Under Title IX, Defendant UNM must also ensure all employees involved in the conduct of procedures have adequate training as to what conduct constitutes sexual harassment and sexual assaults.

142.    Defendant UNM, through its agents, owe a duty to ensure that no student, faculty or staff member, or member of the public is excluded from participation in, denied the benefit of, or is subjected to discrimination under any educational program on the basis of sex.

143.    Defendants failed to provide Plaintiff will the full benefits and services of and excluded him from participation in and discriminated against him with regards to programs, services and/or activities at the University of New Mexico because of his sex.

144.    Defendants deprived Plaintiff, because of his sex, of his rights to due process through the improper and biased administration of university policies, procedures, regulations and guidelines. Defendants applied their policies and procedures and gender-biased practices in a manner that discriminated against Plaintiff on the basis of his sex and led to an erroneous and adverse outcome.

145.    In discriminating against Plaintiff on the basis of sex, Defendants were under scrutiny and federal investigation for the alleged mishandling of sexual assault complaints and were at significant risk of losing federal funding if it didn't "do more" to "crackdown on" allegations of male students engaging in sexual misconduct against female students. Such federal and public pressure and scrutiny improperly motivated and influenced the disciplinary proceeding against Plaintiff due to his sex.

146.    Defendants collectively promoted and fostered an atmosphere of public pressure within UNM and has acquiesced to public pressure in the media and from federal and state government demanding more swift and severe reaction to female complainants of sexual harassment at the expense of the rights of male employees accused of sexual assault.

147.    From the start, the "investigation" by Defendants were biased against Plaintiff because of the perceived epidemic of sexual assaults on female students by male students at UNM and on college campuses nationally.

148.    Based on Plaintiff's gender, Defendants presumed Plaintiff, a male employee accused of sexual misconduct, was guilty, in spite of the evidence and facts, which led to an erroneous outcome.

149.    Defendants purposely ignored exculpatory, conspired with the accuser to attempt to manufacture false evidence, and interpreted all evidence to ensure a finding of sexual misconduct.

150.    Defendants' actions were intentional, and in deliberate indifference to the rights of Plaintiff, the discovery of truth, and the correct outcome of the investigation.

151.    Defendants failed to conduct an adequate, reliable, and impartial investigation when it conducted its investigation of the allegations against Plaintiff and when its subsequent adjudication was conducted in a manner biased against Plaintiff due to his sex.

152.    Defendants created an environment where an accused male employee is fundamentally denied due process by being prosecuted through the investigatory and disciplinary process under a presumption of guilt. Such a one-sided process deprived Plaintiff, as a male student, of educational opportunities on the basis of his sex.

153.    Defendants' response to the allegations against Plaintiff (levying the most severe sanction) were disproportionate and unreasonable in light of the circumstances.

154.    Defendants actively engaged in sex-based discrimination against the Plaintiff by terminating Plaintiff's employment without due process of law.

155.    Defendants failed to provide adequate training for UNM officials, including Ms. Buchs and UNM's the Title IX Coordinator.

156.    Defendants failed to adopt procedures that ensure both the Title IX rights of the complainant but also accord due process to both parties involved, including providing adequate, reliable and impartial investigation of complaints.

157.    Defendants failed to provide adequate staffing of UNM's OEO office, failed to ensure that all employees involved in the investigation of alleged sexual misconduct had adequate training as to what conduct constitutes sexual harassment and alleged sexual assaults as required by Title IX, and failed to provide adequate training on how to conduct sexual misconduct investigations and adjudications.

158.    Defendants failed to ensure its OEO investigators were adequately trained in collecting and analyzing evidence in order to make consistent and reliable determinations of credibility during investigations.

159.    Defendants failed to ensure impartial resolution of Title IX complaints.

160.    Defendants failed to ensure a prompt resolution of the complaint against Plaintiff.

161.    Defendants treated Plaintiff differently and less favorably on the basis of his sex.

162.    Defendants imposed a burden upon Plaintiff to disprove the allegations levelled against him on the basis of his gender.

163.     Defendants intentionally treated Complainant preferentially on the basis of her sex by adopting her statements as true, even though the statements were illogical, inconsistent, or contrary to other witnesses, and ignoring all evidence exculpatory to Plaintiff.

164.     Upon information and belief, Defendants have demonstrated a pattern of inherent and systematic gender bias and discrimination against men accused of sexual misconduct.

165.     Upon information and belief, Defendants were motivated by gender bias in initiating, adjudicating, and implementing the disciplinary proceeding and sanctions against Plaintiff based upon his sex as a male employee accused of sexual misconduct because of the increasing public attention and controversy of sexual assault on campuses and at UNM specifically.

166.     Plaintiff was subjected to a biased, prejudiced, and explicitly unfair process in violation of Title IX.

167.     As a direct and proximate cause of the discriminatory acts of Defendants, Plaintiff has suffered unlawful sex-based discrimination, including but not limited to, the termination of his long-standing employment at UNM, loss of career opportunities, economic injuries and other direct and consequential damages.

168.     As a result of the foregoing, Plaintiff is entitled to damages in the amount to be determined at trial, plus pre-judgment interest, attorneys' fees, expenses, and costs.

### COUNT III: DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND NEW MEXICO HUMAN RIGHTS ACT

169.     Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if set forth in full herein.

170.     Plaintiff is a member of a protected class.

26

171.    Plaintiff was qualified for his position

172.    Plaintiff suffered an adverse employment action.

173.    Defendants' termination of Plaintiff were based in whole or in part on sex-based discrimination.

174.    Defendants discriminated against Plaintiff on the basis of his sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 *et seq.*, ("Title VII") and the New Mexico Human Rights Act, NMSA 1978 § 28-1-1 *et seq.*, ("NMHRA").

175.    Plaintiff has exhausted his administrative remedies in advance of filing this action.

176.    As a result of the foregoing, Plaintiff is entitled to damages in the amount to be determined at trial, plus pre-judgment interest, attorneys' fees, expenses, and costs.

## COUNT IV: DEFAMATION

177.    Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if set forth in full herein.

178.    Defendants published false and defamatory statements of fact concerning Plaintiff;

179.    Those who heard the statements understood them to be defamatory; and

180.    Defendants knew that the communication was false or negligently failed to recognize that it was false or acted with malice or reckless indifference to the trust;

181.    Defendants' statements caused actual injury to the Plaintiff's reputation;

182.    As a result of the foregoing, Plaintiff is entitled to damages in the amount to be determined at trial, plus pre-judgment interest, attorneys' fees, expenses, and costs.

## COUNT V: TORTIOUS INTERFERENCE WITH
## EMPLOYMENT/PROSPECTIVE BUSINESS

183.    Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if set forth in full herein.

184.    The individual Defendants have tortuously interfered with Plaintiff's employment at UNM, as well as his future employment opportunities outside of UNM.

185.    As a result of the foregoing, Plaintiff is entitled to damages in the amount to be determined at trial, plus pre-judgment interest, attorneys' fees, expenses, and costs.

## COUNT VI: BREACH OF IMPLIED EMPLOYMENT CONTRACT

186.    Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if set forth in full herein.

187.    Defendant UNM, acting through its Board of Regents and employees, created an implied employment contracts when it employed Plaintiff and imposed an extensive collection of policies and procedures controlling the terms and conditions of his employment, including but not limited policies and procedures regarding allegations of sexual harassment, sexual misconduct, and employee discipline.

188.    Defendant UNM committed several breaches of its implied employment agreement with Plaintiff, including but not limited to failing to comply with UNM's own policies and procedures.

189.    As a direct and proximate result of the above conduct, Plaintiff sustained significant damages, including, without limitation, loss of income, loss of professional and career opportunities, emotional distress, and other direct and consequential damages.

190.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, and costs.

## COUNT VII – BREACH OF COVENANT OF
## GOOD FAITH AND FAIR DEALING

191.    Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if set forth in full herein.

192.    Defendants' have breached the duty of good faith and fair dealing inherent in every contract.

193.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, and costs.

## COUNT VIII – NEGLIGENT
## HIRING/INVESTIGATION

194.    Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if set forth in full herein.

195.    Defendants breached the duty owed to Plaintiff conduct an unbiased investigation.

196.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, and costs.

## COUNT IX – SPOLIATION OF EVIDENCE

197.    Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if set forth in full herein.

198.    Defendants intentionally or negligently deleted and permanently destroyed the email account for Defendant Buchs.

199.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, and costs.

## COUNT X – REQUEST FOR INJUNCTIVE
## RELIEF

200.    Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if set forth in full herein.

201.    The allegations of sexual misconduct and Defendants' termination of Plaintiff's employment resulted in permanent, life-long sanctions against Plaintiff which are quasi-criminal in nature. Plaintiff's reputation and good name, both personally and professionally, has been tarnished—if not destroyed—due to UNM's biased and inadequate adjudication of the claims against him.

202.    As a result of these significant due process violations, Plaintiff suffered and continues to suffer ongoing harm and irreparable injury and damage to his employment prospects, and therefore is entitled to injunctive relief, including a reversal of the outcome and findings of the UNM investigation, expungement of Plaintiff's employment records reflecting the improper discipline/sanction and production of verification of such expungement to Plaintiff, prohibiting UNM from disclosing Plaintiff's employment records reflecting discipline during the pendency of this action, and reinstatement to his position at UNM

203.    As a result of the foregoing, Plaintiff is entitled to injunctive relief against Defendants as requested in this Complaint.

## COUNT XI – REQUEST FOR DECLARATORY RELIEF – 28 U.S.C. § 2201 AND NMSA 1978 § 44-6-1 ET SEQ.

204.    Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if set forth in full herein.

205.    An actual controversy exists between Plaintiff and Defendants regarding Defendants' investigative and sanctioning process of male students and employees accused of sexual misconduct.

206.     Plaintiff seeks a judicial determination pursuant to the New Mexico Declaratory

Judgment Act, NMSA 1978 § 44-6-1 *et seq*. and/or the United States Declaratory Judgment Act,

28 U.S.C. § 2201, that the investigative and sanctioning processes utilized by UNM are

unconstitutional, improper, and violative of Plaintiff's rights, and, as such, inadequate and

invalid as a matter of law.

207.     A judicial determination resolving this actual controversy is necessary and

appropriate at this time.

208.     Due to Defendants' actions and inactions as alleged herein, Plaintiff has suffered,

and will continue to suffer, irreparable injury.

209.     Plaintiff does not have an adequate remedy at law.

210.     As a result of the foregoing, Plaintiff is entitled to declaratory relief against

Defendants as requested in this Complaint.

### PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff demands:

a.     Injunctive relief to redress the injuries proximately and directly caused by

Defendants' conduct as stated herein, including the issuance of an order (1) enjoining Defendants

from disclosing Plaintiff's education records reflecting discipline during the pendency of this

action; (2) requiring Defendants to expunge the improper sanction from Plaintiff's academic

records and providing Plaintiff with confirmation of such expungement; and (3) requiring

Defendants to reinstate Plaintiff to his prior position at UNM.

b.     Declaratory relief, including a declaration that the investigative and

sanctioning processes used by UNM are unconstitutional, improper, and violative of Plaintiff's

rights;

31

c.      Damages in an amount to be determined at trial;


d.      Award Plaintiff attorney fees and costs;

e.      Award Plaintiff attorney fees pursuant to 42 U.S.C. §§ 1988 and 1983; and

f.      Awarding Plaintiff such other and further relief as the Court deems just

and proper.


Respectfully submitted,

**JACKSON LOMAN STANFORD & DOWNEY, P.C.**


By: /s/Travis G. Jackson
Travis G. Jackson
Meghan D. Stanford
Sarah K. Downey
Attorneys for Plaintiff Michael S. Briggs
201 Third Street NW, Suite 1500
Albuquerque, NM 87102
(505) 767-0577/ (505) 242-9944 fax
travis@jacksonlomanlaw.com
meghan@jacksonlomanlaw.com
sarah@jacksonlomanlaw.com