IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL BRIGGS,

       Plaintiff,

v.                                                          No. 1:20-cv-00651-RB-JHR

THE UNIVERSITY OF NEW MEXICO, a public
university, *et al.*

       Defendants.

## UNM DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM

Defendants University of New Mexico (UNM), Board of Regents of the University of New Mexico (BORUNM), Garnett Stokes, Paul B. Roth, Dorothy Anderson, Laura Vele Buchs, and Kevin Gick, through their undersigned counsel, hereby submit their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 12(b)(6) and 56(c).  Plaintiff opposes this Motion.

### I.        Introduction

This lawsuit arises from an alleged off-campus sexual assault on October 14, 2016 involving Plaintiff and Joy Van Meter.  There is no dispute that Plaintiff and Ms. Van Meter engaged in sexual relations.   However, Ms. Van Meter alleges the sexual activity was nonconsensual while Plaintiff claims it was consensual.  While Plaintiff and Ms. Van Meter differ as to whether the sexual encounter was consensual or not, that dispute is not material to this motion given the many facts underlying the sexual encounter are not in dispute.  It is the facts that are not in dispute—facts that Plaintiff admitted—that formed the basis of the challenged disciplinary action against him.

For example, there is no dispute the parties had been drinking together or that Ms. Van Meter subsequently vomited.[1]  Plaintiff admitted he offered Ms. Van Meter a toothbrush and a shower so she could clean herself after vomiting.  He then acknowledged he initiated sexual contact after he followed Ms. Van Meter into the shower.  Oral sex and alleged digital penetration followed,[2] initiated by Plaintiff not Ms. Van Meter.  Plaintiff further conceded that Ms. Van Meter never touched him in a sexual manner and that her demeanor never changed when he was kissing her on the mouth versus other parts of her body.  In addition, Plaintiff admitted that Ms. Van Meter never indicated she was enjoying the sexual activity.  Ms. Van Meter had driven to Plaintiff's house.  However, understanding that Ms. Van Meter was still too incapacitated to drive herself home after the sexual encounter, Plaintiff drove her home.

After the alleged rape, Ms. Van Meter complained to UNM's Office of Equal Opportunity (OEO).  Defendant Laura Vele Buchs led OEO's investigation.  OEO concluded the sexual encounter was nonconsensual based in part on the absence of evidence to show that Plaintiff had asked if Ms. Van Meter wanted to engage the sexual activity reported or that she was enjoying the sexual activity.  Because UNM's policy considers sex nonconsensual absent a clear act or statement to show consent, and because that policy affirmatively states that consent may not be inferred from silence, passivity, or lack of active response alone, OEO determined that Plaintiff treated Ms. Van Meter's silence, passivity, and lack of response as consent in direct contravention of UNM's policy.  However, although OEO found that the sexual encounter was nonconsensual

---

[1] Whether Ms. Van Meter vomited because she had drunk too much or because she was drugged may be in dispute; however, the fact that Plaintiff was aware she had vomited is not.

[2] Although it is unclear whether Plaintiff is disputing that digital penetration occurred, a medical examination following the incident revealed genital tears and an abrasion.  Again, however, any dispute over what exactly occurred is not material to this Motion given that it is undisputed that at a minimum, oral sex did, in fact, occur.

and that it created a subjectively hostile work environment for Ms. Van Meter, OEO also determined there was no objectively hostile work environment because Plaintiff was not Ms. Van Meter's supervisor and there was no evidence he had retaliated against her after she reported the alleged rape. Therefore, OEO concluded there was no violation of UNM's policies prohibiting a hostile work environment.

Ms. Van Meter appealed OEO's determination to UNM's President, Defendant Garnett Stokes. Dr. Stokes reversed OEO's finding, reasoning in part that Plaintiff's presence on campus in close proximity to Ms. Van Meter was sufficient to find that a hostile work environment existed, even if Plaintiff and Ms. Van Meter did not work directly together. Because of President Stokes' determination that the alleged sexual assault created a hostile work environment in violation of UNM's policies, Defendant Dr. Paul Roth, the disciplinary authority, issued a Notice of Contemplated Action (NCA) for Discharge. Plaintiff responded in writing to the NCA but ultimately, UNM terminated Plaintiff's employment. Plaintiff then requested a peer review hearing to appeal his termination. UNM held a three-day hearing before a three-person panel. Over 100 exhibits were submitted into evidence and numerous witnesses testified. The peer review panel upheld the termination. Plaintiff then sued, filing his Complaint (Doc. 1) in this action.

In his Complaint, Plaintiff asserted multiple claims against multiple Defendants. The Court entered its September 22, 2021 Order (Doc. 39) dismissing most of them. Therefore, only the following claims remain: (1) Count II for Title IX violations against UNM and BORUNM; (2) Count III for Title VII violations (all Defendants) and NMHRA violations (all Defendants except Gick); and (3) Counts X and XI for injunctive and declaratory relief, respectively. For the reasons set forth below, these remaining claims fail as a matter of law.

## II.    Undisputed Material Facts

1.      Joy Van Meter claimed Plaintiff raped her on October 14, 2016 during an off-campus encounter.  *See Preliminary Letter of Determination (PLOD) dated Dec. 4, 2017* at 3-5, attached as Exh. A-1 to *Decl. of Francie Cordova* (Exh. A hereto).

2.      According to Ms. Van Meter, she and Plaintiff met at a bar, consumed alcohol, went to Plaintiff's house, then consumed more alcohol before she became nauseated and dizzy, vomited, convulsed, had balance and processing issues, and became confused.  Ms. Van Meter alleged Plaintiff encouraged her to shower, disrobed her, entered the shower with her, and engaged in sexual activity, including oral sex and digital penetration.  *PLOD* at 3-5 (Exh. A-1). [3]

3.      Ms. Van Meter reported the alleged sexual assault to OEO.  *PLOD* at 1, § II (Exh. A-1) (Complainant contacted OEO on Oct. 26, 2016).

4.      Vele Buchs investigated the sexual assault complaint.  *See, generally, PLOD* (Exh. A-1) (signed by Vele Buchs).

5.      The investigation including obtaining and analyzing Ms. Van Meter's statement, *PLOD* at 2, § III (Exh. A-1), Plaintiff's statement, *id.* at 5, § IV, the statements of seven other witnesses, *id.* at 8, § V, and documentary evidence.  *Id.* at 17.

---

[3] Defendants do not set forth UMF 2 to prove as undisputed Ms. Van Meter's version of events. Whether the sex was nonconsensual is immaterial to summary judgment because even if Plaintiff could establish that UNM was wrong in its determination that Ms. Van Meter did not consent, whether UNM's determination was erroneous is not the relevant summary judgment inquiry.  The Court's job is "'not to act as a super personnel department, second guessing employers' honestly held (even if erroneous) business judgments.'"  *Brown v. Unified Sch. Dist. No. 501,* 459 Fed. Appx. 705, 710 (10th Cir. 2012) (unpublished) (internal quotations and citations omitted). Therefore, the relevant question is not whether UNM's decision was wise, fair, or correct, but whether there was an honestly held belief that the challenged decision was made in good faith. *Rivera v. City and County of Denver,* 365 F.3d 912, 924-25 (10th Cir. 2005).  Ms. Van Meter's version of events in UMF 2 is set forth only to give context to OEO's finding that she did not consent.

6.      Plaintiff does not dispute the sexual activity occurred; however, he maintains the sexual conduct was consensual.  *PLOD* at 5, § IV (Exh. A-1).

7.      Regarding the sexual activity, Plaintiff admitted:

a.      He initiated the sexual contact,  *PLOD* at 20 (Exh. A-1);

b.      Ms. Van Meter was not touching him in a sexual manner, *id.*;

c.      Ms. Van Meter's demeanor never changed when he was kissing her on the mouth versus other parts of her body, *id.*;

d.      Ms. Van Meter never indicated she was enjoying the sexual activity, *see id.*;

e.      Ms. Van Meter never stated that she wanted to have sex with Plaintiff, *id.* at 19; and;

f.      Plaintiff drove Ms. Van Meter home assuming she was incapacitated.  *Id.* at 7 (noting Plaintiff's admission that he "'assumed'" Ms. Van Meter wanted a ride home because she had been drinking and that Plaintiff had to "'navigate[]'" Ms. Van Meter to her house when he dropped her off).

8.      According to UNM's Policy 2720 at § 2.2 (Exh. A-2 to Cordova Decl.), harassment includes behaviors that "are sufficiently severe or pervasive to have the effect of unreasonably interfering with [a person's] … working conditions … by creating an intimidating, hostile, or offensive environment."

9.      UNM's Policy 2740, § 3 (Exh. A-3 to Cordova Decl.) states that "[s]exual activity will be considered 'without consent' if no clear act or statement is given.  Consent may not be inferred from silence, passivity or lack of active response alone."

10.     UNM's Policy 2730, § 2.2 (Exh, A-4 to Cordova Decl.) includes rape, sexual assault, and sexual coercion as examples of sexual harassment.

11.    OEO concluded that Plaintiff subjected Ms. Van Meter "to unwelcome sexual activity, which "was severe in nature," *PLOD* at 27 (Exh. A-1), absent evidence to show that Plaintiff asked if Ms. Van Meter wanted to engage the sexual activity reported and absent evidence that she was enjoying the sexual activity. *Id.* at 20.

12.    OEO concluded that Plaintiff treated Ms. Van Meter's silence, passivity, and lack of response as consent in direct contravention of UNM's policy. *See PLOD* at 20-21 (Exh. A-1).

13.    OEO also concluded that while the sexual activity "had the subjective effective [sic] of creating a hostile work environment for [Ms. Van Meter]," there was no objective evidence of unreasonable interference with Ms. Van Meter's work environment. *PLOD* at 27 (Exh. A-1).

14.    Based on OEO's conclusion that there was no objectively hostile work environment, it issued its PLOD concluding that there was no violation of UNM's employment policies by Plaintiff. *PLOD* at 28 (Exh. A-1).

15.    Plaintiff submitted information in response to the PLOD regarding the hostility of her work environment based on the alleged rape, including that (a) Plaintiff was copied on emails, letters, and memoranda she received for work, which made her work life very difficult after the alleged sexual assault, *Final Letter of Determination (FLOD)* at 1, *dated Dec. 12, 2017*, attached as Exh. A-5 to Cordova Decl. at 1 ("Complainant asserts, via her attorney, Respondent being carbon copied on 'emails, letters, and memos' she received 'made [her] work life very difficult after the incident and she found it harder to perform her job'"); and (b) the order of protection she obtained against Plaintiff excepted contact between the parties for work-related matters, implying there was the possibility that the parties would run into each other at work. *Id.* at 2.

16.    Plaintiff, conceding the parties worked closely enough together on campus to warrant an exception in the protective order based on incidental contact should he run into Ms.

Van Meter at work, stipulated to language in the protective order that if the parties found themselves within 25 feet of each other at work, it would not be deemed a violation of the order. *See FLOD* at 2 (Exh. A-5) (confirming the terms of the protective order); *see also Stipulated Protective Order* at § 4 (Exh. A-6 to Cordova Decl.).

17.    Despite this additional information, OEO issued its FLOD, affirming the conclusions as set forth in the PLOD. *See, generally, FLOD* (Exh. A-5).

18.    Ms. Van Meter appealed OEO's determination that there was no policy violation to President Stokes. *See March 29, 2018 letter from Stokes to Villa* (Exh. A-7 to Cordova Decl.) (confirming Ms. Van Meter's appeal).

19.    President Stokes reversed OEO's finding, reasoning in part that the evidence showed the parties "worked in close proximity with one another," which "created an objectively hostile work environment for [Ms. Van Meter] based on the sexual misconduct at issue," which was "in violation of UNM policy." *Stokes letter* at 1 (Exh. A-7).

20.    In reaching the conclusion that there was an objectively hostile work environment, President Stokes relied in part on the following evidence:

a.    Although Plaintiff had no direct supervisory authority over Ms. Van Meter, his position at UNM gave him influence at her department level; therefore, an objective or reasonable person in Ms. Van Meter's position would fear retaliation or Plaintiff's negative influence on her work environment, *Stokes letter* at 1 (Exh. A-7); and

b.    The parties worked in close proximity to each other following the alleged sexual assault; therefore, an objective or reasonable person could find Ms. Van Meter was subjected to a hostile work environment based on the presence in her work environment of her alleged rapist. *Id.*

21.     President Stokes instructed OEO to reverse its determination and find that Plaintiff's actions "resulted in a hostile work environment for [Ms. Van Meter] in violation of University Administrative Policies 2720, 2730 and 2740." *Stokes letter* at 2 (Exh. A-7).

22.     Dr. Paul Roth, the disciplinary authority, then became involved regarding the imposition of discipline, given the policy violation. *See Disciplinary Action Form* (Exh. A-8).

23.     UNM issued Plaintiff a Notice of Contemplated Action (NCA). *See Disciplinary Action Form* at 1 (Exh. A-8 to Cordova Decl.) (confirming that Plaintiff was "given a Notice of Contemplated Action (NCA) for Discharge for unprofessional and unacceptable behavior; specifically, creation of a hostile work environment in violation of UNM Policy").

24.     Plaintiff submitted a written response to the NCA. *See Disciplinary Action Form* at 1 (Exh. A-8 to Cordova Decl.) (confirming Plaintiff's submission of a response to the NCA).

25.     Dr. Roth ultimately terminated Plaintiff's employment. *See Disciplinary Action Form* at 2 (Exh. A-8 to Cordova Decl.).

26.     Plaintiff requested a peer review hearing to challenge his termination. *See Nov. 13, 2019 letter from Emmons, Jaramillo, and Kasparian to Plaintiff* at 1 (Exh. A-9 to Cordova Decl.).

*27.*     UNM held a three-day hearing before a three-person panel during which Plaintiff had the assistance of counsel, called and cross-examined witnessed, offered documentary evidence, and submitted written, post-hearing briefs for the panel's consideration. *Nov. 13, 2019 letter* at 1 (Exh. A-9).

28.     The panel issued its decision upholding the termination. *See Disciplinary Action Form* at 7-8 (Exh. A-8 to Cordova Decl.).

### III.    Legal Argument

### A.  Plaintiff's Title IX claim fails as a matter of law

Plaintiff alleges that Defendants[4] discriminated against him in violation of Title IX.  Title IX prohibits sex discrimination by recipients of federal education funding.  *Jackson v. Birmingham Board of Education,* 544 U.S. 167, 173 (2005).  Therefore, "Title IX 'bars the imposition of university discipline where [sex] is a motivating factor in the decision to discipline.'"  *Doe v. Univ. of Denver (Doe II)*, 1 F. 4th 822, 829 (10th Cir. 2021) (internal citation omitted).  A plaintiff can offer direct evidence of sex-based bias, but where no such direct evidence exists, a plaintiff can try to prove a prima facie case with indirect evidence by using the *McDonnell-Douglas* burden shifting framework.  *Doe II,* 1 F. 4th 829 (the burden shifting framework provides a method of proving discrimination by indirect evidence where direct evidence is unavailable).  Courts analyze indirect evidence of both alleged Title IX and Title VII violations under the same burden-shifting framework.  *Throupe v. Univ. of Denver,* 988 F.3d 1243, 1251 (10th Cir. 2021).

There is no direct evidence here of sex-based bias.  For example, there are no facts establishing that UNM's policies are discriminatory towards men on their face.  *See TWA, Inc. v. Thurston,* 469 U.S. 111, 121 (1985) (a discriminatory policy requirement is direct evidence of discrimination); *Heim v. Utah,* 8 F. 3d 1541; 1546 (10th Cir. 1993) (considering direct evidence of discrimination due to an illegal policy in the context of a Title VII claim); *Hill v. Downs at Abq., Inc.,* No. 09-cv-0009-JP-GBW, 2010 WL 11591040, at   * 3 (D.N.M. Jan. 4, 2010) (same).

---

[4]The University of New Mexico is not a proper party to this lawsuit; rather, the appropriate defendant is BORUNM.  *See Tucker v. UNM Board of Regents,* 618 F. Supp. 3d 1201, 1209 (D.N.M. 2022).  BORUNM is the entity with the ultimate power over UNM's operations.  1978 NMSA, § 21-7-7.  Therefore, the Court should dismiss UNM.

Plaintiff's Complaint (Doc. 1), however, does not even allege that UNM's employment policies are discriminatory on their face.

When a Title IX plaintiff must rely on indirect proof of discrimination to prove a prima facie case, as set forth above, the same *McDonnell-Douglas* burden shifting framework applies that courts use in the Title VII context, as follows: First, the plaintiff has the burden of showing that his sex was a motivating factor in the university's investigation and/or disciplinary decision. *Doe II*, 1 F. 4th at 829. If a plaintiff can meet that burden, then the burden shifts to the university to articulate a legitimate, nondiscriminatory reason for its decision. *Id.* The burden then shifts back to the plaintiff to show that the proffered reason is a pretext for discrimination. *Id.* There is no evidence here to support a Title IX claim under this burden shifting framework.

1. **Plaintiff cannot meet his initial burden to prove a prima facie case under *McDonnell-Douglas* absent evidence that sex was a motivating factor in the challenged conduct**

To meet his initial burden and circumstantially show sex was a motivating factor in OEO's investigation or his ultimate termination, Plaintiff must point to facts that show an anti-male bias. *See Holmstrom v. Univ. of Tulsa,* 2023 WL 3311842, at * 3 (N.D. Okla. May 8, 2023). Plaintiff can do so under an "erroneous outcome" or "selective enforcement" theory. *Doe II,* 1 F. 4th at 829. Under an erroneous outcome theory, a plaintiff can raise an inference of anti-male bias with facts sufficient to cause some articulable doubt on the accuracy of the outcome of the disciplinary proceedings. *Id.* at 830. However, to create such an inference, a plaintiff must also show that there is a causal connection between the flawed outcome and gender bias. *Id.* Under the "selective enforcement" theory, a plaintiff must show that a similarly-situated member of the opposite sex was treated more favorably and that the favorable treatment was due to her gender. *Id.*

If a plaintiff provides evidence of an erroneous outcome or selective enforcement tied to sex, it may raise an inference that sex was a motivating factor in a university's disciplinary process. *Id.* However, "[g]eneralized evidence, standing alone, cannot satisfy a Title IX plaintiff's summary judgment burden 'unless combined with a particularized something more … that would indicate that [the university]'s decision in his particular case was based on his gender.'" *Id.* at 831 (*quoting Doe v. Univ. of Denver (Doe I)*, 952 F.3d 1182, 1192-93 (10th Cir. 2020). The key piece, therefore, is evidence that ties the challenged conduct to the fact that Plaintiff here is male. *See id.* Without evidence showing that gender influenced the decision-making, there is no prima facie case under Title IX. *See Flor v. UNM,* 469 F. Supp. 3d 1143, 1157 (D.N.M. 2020).

### a.  There is no evidence to establish the erroneous outcome theory

Considering the erroneous outcome theory in the context of the factual record here, there is neither evidence that the disciplinary process was flawed to the extent it raises an inference of bias nor evidence that any alleged flaws were tied to gender. Regarding the former, acts that cast doubt on the outcome of a disciplinary proceeding can include procedural flaws, but only if those flaws affect proof. *Flor,* 469 F. Supp. 3d at 1158. Despite any alleged procedural flaws here, it is undisputed that the ultimate decision made by the peer review panel occurred after an extensive three-day hearing that resembled a trial. There is no evidence of any flaws that impacted proof.

There is also no evidence of the type of procedural flaws that have led courts to infer bias. *See, e.g., Doe v. Purdue Univ.,* 928 F.3d 652, 657-660 (7th Cir. 2019) (inference of bias because a sexual assault finding was made without considering the supposed victim's account, the school did not share with the accused the nature of the evidence against him, the accused was barred from presenting witnesses on his own behalf, and the decision-makers did not review the evidence); *French v. Denver Publ. Schools,* No. 23-cv-1614-NYW-MDB, 2024 WL 3276159, at * 16 (D.

Colo. July 2, 2024) (inference of bias when school officials failed to interview the accused's witnesses, there were knowing false accusations made against the accused, the complainant recanted and admitted her accusations were part of a conspiracy to get the accused fired but school officials withheld that fact from the accused, the accused never received results of the investigation, and the accused never received notice of his options for formally or informally disputing the accusations). Unless the procedural flaws rise to the level of those in the *Purdue* or *French* cases, they will not suffice to support an erroneous outcome theory because mere mistakes in the disciplinary process do not imply bias. *French,* 2024 WL 3276159, at * 16. There is no comparable evidence in this case of procedural flaws like those in the above-cited cases.

Moreover, as set forth above, even if there were procedural flaws, without evidence demonstrating causation between the flawed procedure and gender bias, Plaintiff cannot sustain an erroneous outcome theory. *See, e.g., Flor,* 469 F. Supp. 3d at 1158. In the *French* case, for example, despite procedural irregularities, which far outweigh anything even alleged in this case, the court nonetheless dismissed the plaintiff's Title IX claim absent evidence suggesting that the procedural flaws were caused by sex-based bias. 2024 WL 3276159, at * 17. Evidence demonstrating causation can include statements by those involved in the disciplinary process or patterns of decision-making that show the influence of gender. *Flor,* 469 F. Supp. 3d at 1158. There is no such evidence here.[5] For example, there is no evidence the OEO investigator (Vele Buchs), BORUNM's President (Stokes) who decided the appeal, the sanctioning official who imposed the discipline (Roth), or any members of the peer review panel were biased against men or were influenced by gender in their decision-making. Likewise, there is no evidence that the

---

[5]To the extent Plaintiff bases an erroneous outcome claim on the same facts that gave rise to his due process claim, it should be noted that the Court dismissed Plaintiff's due process claim.

investigatory or disciplinary process itself was inherently biased against men.  While Plaintiff has alleged UNM's conduct was biased against men because UNM was acquiescing to public pressure to better respond to female complainants of sexual assault, this Court, as well as the Tenth Circuit, have expressly rejected such an argument as evidence of gender bias.  *Id.* at 1159-60; *see also Doe I,* 952 F.3d at 1192-93.

Moreover, UNM adjudicates sexual misconduct proceedings according to a preponderance of the evidence standard.  *Lee v. UNM,* 500 F. Supp. 3d 1252 (D.N.M. 2020) (analyzing disciplinary proceedings in the case of a student-on-student sexual assault).  This standard maximizes the number of correctly decided disciplinary actions, *id.,* a factor that also negates application of the erroneous outcome theory.  While Plaintiff has alleged bias because primarily men are accused of sexual assault, and, therefore, any sexual assault investigation or disciplinary proceedings is inherently biased against men, *Plaintiff's Dep.* at 138:7-13 (Exh. G), courts have expressly rejected that identical argument.  *See, e.g., Doe I,* 952 F.3d at 1194 (the gender makeup of sexual assault perpetrators and victims are beyond the control of the school); *Doe v. Univ. of Colo.,* 255 F. Supp. 3d 1064, 1078 (D. Colo. 2017) (although men are usually accused of sexual misconduct, a university is not responsible for the gender makeup of accusers and the accused; therefore, that it investigates and disciplines men for sexual misconduct more than women creates no inference in a plaintiff's favor).

Based on the foregoing, Plaintiff cannot point to evidence to establish an erroneous outcome that was improperly influenced by gender.  Therefore, he cannot establish a prima facie case of Title IX discrimination based on the erroneous outcome theory.

**b. There are no facts to establish selective enforcement**

Likewise, the record does not support a selective enforcement theory. To create an inference of discrimination under a selective enforcement theory, Plaintiff must first show that a similarly-situated member of the opposite sex was treated more favorably. *See Doe II,* 1 F. 4th at 830. In other words, Plaintiff here must point to a direct comparator. *Tucker v. UNM Board of Regents,* 618 F. Supp. 3d 1201, 1220 (D.N.M. 2022). There is no evidence here that a similarly situated woman—one accused of sexual assault—was treated more favorably than Plaintiff. Even if Plaintiff could show disparate treatment, he must also point to evidence that the disparate treatment was due to gender. *See Doe II,* 1 F. 4th at 830. Again, no such evidence exists.

In a case that is analogous to this one and which involved many of the same party defendants, the United States District Court for the District of New Mexico rejected many of the same claims Plaintiff here is making. In *Lee,* 500 F. Supp. 3d 1181, the plaintiff sued UNM, BORUNM, Laura Vele Buchs, the same defendants as in this case, as well as others, following UNM's decision expelling him for nonconsensual sexual contact. His claims were many of the same Plaintiff here brought, including a claim for Title IX violations. In the *Lee* case, the plaintiff, a 31-year-old graduate student, went with one of his roommates to a UNM event. *Id.* at 1192. After the event, the two returned to the dorm with a 19-year-old freshman. *Id.* at 1193. The three started drinking. *Id.* at 1194-95. The victim became very intoxicated and had to be held up so she did not fall over. *Id.* at 1195. The plaintiff and his roommate both had sexual contact with the victim even though she was "'very incoherent of what was happening.'" *Id.* at 1196.

Although the *Lee* case involved student discipline and focused primarily on the investigative and disciplinary processes in the context of a procedural due process claim, a claim that Plaintiff here dropped, the court made several determinations given the factual context of the

case that can provide guidance in these summary judgment proceedings. For example, the *Lee* court cited the decision in *Mangels v. Pena,* 789 F.2d 836, 838 (10th Cir. 1986), which recognized the presumption of honesty and integrity on the part of UNM's OEO. *Lee*, 500 F. Supp. 3d at 1245. Absent any demonstration of actual bias by Vele Buchs and given that UNM's factfinding process was not inherently biased, the *Lee* court found that there was no genuine issue of fact as to whether there was decision-making influenced by gender. *Id.* That there is no inherent bias in UNM's factfinding process and given the absence of evidence of actual bias on the part of the decision-makers here, there is no support for a selective enforcement theory.

"'Because honesty and integrity are presumed on the part of a tribunal, there must be some countervailing reason to conclude that the decisionmaker is actually biased with respect to the factual issues being adjudicated.'" *Id.* at 1247 (*quoting Mangels v. Pena,* 789 F.2d at 838) (internal quotations and citation omitted). Therefore, to rebut the presumption of a lack of bias on the part of a tribunal, a plaintiff must point to facts of prejudice or prejudgment such that there is a probability of actual bias. *Id.* Given that "[f]actfinding is a difficult process," the burden to rebut the presumption is quite heavy. *Id.* Concrete examples of bias are necessary. *Id.* at 1248. Plaintiff here, however, cannot point to any concrete examples of gender bias on the part of any of the decision makers in connection with the investigation or disciplinary process.

While the investigatory and disciplinary process here necessarily involved a credibility determination because the parties' versions of events differed, and although credibility determinations may present the most likely circumstance in which gender bias will arise, a credibility determination alone, without more, does not raise an inference of gender bias. *Doe v. Univ. of Colo.,* 255 F. Supp. 3d at 1079. A thorough investigation, including witness interviews, and an administrative disciplinary process negates an implication of gender bias, especially in the

absence of evidence that those judging credibility would have come to a different determination if the accused had been female and the accuser had been male. *See id.*

The facts here show there was a thorough OEO investigation, with consideration given to Plaintiff's version of events, witness statements, and documentary evidence considered. After the initial determination, the parties had the opportunity to respond with additional evidence, which OEO considered before issuing its final determination. That Vele Buchs found no policy violation despite the alleged sexual assault undermines Plaintiff's argument of anti-male bias—a logical inference is that if Vele Buchs had an anti-male bias, she would have determined Plaintiff had violated UNM's employment policies. On appeal, President Stokes reviewed the record prior to issuing her decision and before UNM terminated Plaintiff's employment. When Plaintiff disagreed with the termination decision, UNM afforded him a three-day hearing before a three-person panel that resembled a trial, with the assistance of counsel, the examination and cross-examination of witnesses, and the submission of documentary evidence and written briefs. Importantly, although Plaintiff has alleged that UNM had a pro-victim bias based on DOJ pressure, *see Complaint* at ¶¶ 32, 36-40 (Doc. 1), a pro-victim bias does not equate to gender bias for Title IX purposes. *See Doe v. Univ. of Colo,* 255 F. Supp. 3d at 1079. Therefore, weighting the parties' credibility or the evidence cannot support Plaintiff's Title IX claim. *See id.* Based on the foregoing, Plaintiff cannot establish a prima facie case of Title IX discrimination based on the selective enforcement theory.

In sum, there is no direct evidence of anti-male bias and Plaintiff cannot establish a prima facie Title IX claim indirectly under either an erroneous outcome or selective enforcement theory. However, even if Plaintiff could meet his burden to establish a prima facie case of Title IX discrimination, Plaintiff's Title IX claim still fails because he cannot overcome the legitimate, non-

discriminatory reasons for the decision making here. *See Doe II*, 1 F. 4th at 829 (if a plaintiff cannot overcome the legitimate reasons for the challenged conduct, his Title IX claim fails).

### 2. UNM had legitimate, non-discriminatory reasons for the challenged acts

As set forth in *Doe II*, if a plaintiff can establish a prima facie claim of Title IX gender-bias, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action taken.   1 F. 4th at 829. The record establishes legitimate, non-discriminatory reasons for the challenged employment actions here:

OEO's conclusion that the sexual activity was nonconsensual:  There are facts supporting OEO's determination, including that Ms. Van Meter had been drinking, that she was vomiting, that she did not initiate the sexual activity, did not respond to it, and showed no signs of enjoying it, and that Plaintiff believed she was incapacitated to the point where she could not drive herself home.  While Plaintiff disagrees that the sexual encounter was nonconsensual, the Court's role here is "'not to act as a super personnel department, second guessing employers' honestly held (even if erroneous) business judgments.'" *Brown*, 459 Fed. Appx. at 710 (*quoting Young v. Dillon Companies*, 468 F.3d 1242, 1250 (10th Cir. 2006) (internal quotation marks omitted).  Regardless of whether Plaintiff agrees as to the weight given the evidence or the conclusion reached, there was evidence that the sexual activity was nonconsensual.  Therefore, the outcome of the OEO's investigation had a legitimate basis.

President Stokes' reversal:  Although OEO concluded there was no violation of UNM's employment policies because of a lack of evidence that the alleged sexual assault created a hostile work environment, President Stokes' reversal of that decision had an evidentiary basis, including that the parties worked in close proximity to each other.  This finding was borne out by multiple factors.  First, the protective order Ms. Van Meter procured excepted contact with Plaintiff at work,

at Plaintiff's request.  If Plaintiff himself believed he might encounter Ms. Van Meter at work such that he needed an exception to the protective order, it is hard to claim that President Stokes lacked a reasonable basis to assume the parties might come into contact at work.  That the parties' work space overlapped is also evidenced by the fact that they were both copied on the same emails, correspondence, and memoranda.  In addition, while they did not work directly together, President Stokes recognized that Plaintiff had influence in the department where Ms. Van Meter worked. Accordingly, President Stokes' determination that an objective person in Ms. Van Meter's shoes would view the work environment as hostile is supported by facts.  Again, while Plaintiff may interpret the facts differently, there is no basis to argue that President Stokes' decision lacked a factual basis.

Importantly, President Stokes' decision that an off-campus incident created a hostile work environment is consistent with the law.  For example, in *Davis v. Hospitality Staffing Solutions, LLC,* 2016 WL 8902590 (N.D. Ga. Dec. 9, 2016), during a non-work-related trip, a man raped his co-worker.  The employer, focusing on the rape itself, argued that it could not be liable for the rape because it happened while the plaintiff was on a personal trip that was not work-related.  *Id.* at * 2.  The court recognized that while the employer cannot be held liable for any conduct that occurred during the personal, non-work-related trip absent notice, *id.,* the result is different after the plaintiff notified her employer about the rape.  *Id.* at * 3.  The plaintiff in *Davis* alleged that she complained she was afraid to work with or be near her perpetrator at her job, *id.*, the same type of allegations Ms. Van Meter made in this case.  Based on the plaintiff's allegations in *Davis*, the court held that it was "more than plausible" that requiring the plaintiff to be in proximity to her accused rapist at work would alter the conditions of her employment such that a reasonable person in her position would find the harassment severe and pervasive, thus creating a hostile work environment.  *Id.*

The *Davis* court's approach is consistent with United States Supreme Court authority. For example, in *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 59-61 (1986), the Supreme Court considered evidence of dinner outside of work with the alleged harasser where he suggested his victim go to a motel to have sexual relations with him and repeated demands for sexual favors after work hours. *See also Fox v. Pittsburg State Univ.,* 214 F. Supp. 3d 1022, 1027-28 (D. Kan. 2016) (rejecting the argument that an employer cannot be liable under Title VII based on conduct occurring off campus and after work hours). Again, while Plaintiff can disagree with President Stokes' decision, because it was consistent with UNM policy and the law, there is no argument that her decision lacked a legitimate basis.

Dr. Roth's termination decision: Dr. Roth terminated Plaintiff for violating UNM's employment policies by creating a hostile environment. Although Plaintiff disagrees with the discipline imposed, Plaintiff has not alleged that UNM's policies do not allow for the termination of employment for someone who has sexually assaulted a fellow UNM employee, even if the assault occurred off campus, if the assault has the effect of creating a hostile work environment. To the contrary, an off campus sexual assault can cause a hostile work environment under both UNM's policies and the law. Therefore, the disciplinary decision had a legitimate basis.

The peer review panel's affirmance: The peer review panel upheld the termination after an extensive three-day hearing that resembled a trial, providing a legitimate basis for its decision.

Given UNM's nondiscriminatory reasons for the challenged employment acts, only if Plaintiff can overcome those reasons by showing they were merely a pretext for discrimination can he sustain a Title IX claim. *See Doe II,* 1 F. 4th at 829. There is no evidentiary support, however, for such an argument.

**3. Plaintiff cannot establish that the reasons underlying UNM's decision-making was a pretext for discrimination**

As set forth above, the identical burden shifting framework applicable in a Title VII claim also applies to a Title IX claim. *See Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019). Therefore, in analyzing the burden shifting framework in the context of Title IX, Title VII case law provides guidance. *See Throupe v. Univ. of Denver,* 988 F.3d 1243, 1251 (10th Cir. 2021) ("'[c]ourts have generally assessed Title IX discrimination claims under the same legal analysis as Title VII claims'") (internal citation omitted). To show pretext, a plaintiff must point to evidence that discrimination or an anti-male bias was a determinative factor in the employment action taken. *See Young,* 468 F.3d at 1250; *Miller v. Eby Realty Group LLC,* 396 F.3d 1105, 1111 (10th Cir. 2005). Therefore, the relevant inquiry is not whether the employer's proffered reasons were wise, fair, or correct. *Young,* 468 F.3d at 1250; *Rivera,* 365 F.3d at 924-25. Rather, the appropriate inquiry is whether the employer honestly believed the reasons underlying the employment action taken and acted in good faith upon those beliefs. *Id.*

Accordingly, to prove pretext, a plaintiff must either point to evidence that the stated reasons for the challenged actions were not held in good faith or that those reasons were so weak, implausible, inconsistent, or incoherent that a reasonable fact finder could conclude that the reasons were not based on an honestly held belief but merely subterfuge for discrimination. *Id.* Importantly, mere procedural irregularities will not support a claim of pretext in the context of a Title IX claim. *Brown-Smith v. Board of Trustees of Univ. of Northern Colo.,* No. 20-cv-3271-MEH, 2021 WL 2805448 (D. Colo. July 6, 2021). There is no evidence here of either a lack of good faith on the part of Ms. Vele Buchs, President Stokes, Dr. Roth, or the peer review panel or that the reasons behind the challenged employment decisions were weak, implausible, inconsistent, or incoherent. Therefore, Plaintiff cannot establish pretext.

Accordingly, even if Plaintiff could directly or indirectly establish Title IX discrimination, which is disputed as set forth *supra.,* Plaintiff cannot overcome the legitimate, non-discriminatory reasons underlying the challenged employment actions by pointing to evidence of pretext. Therefore, Plaintiff's Title IX claim fails as a matter of law.  *See Doe II,* 1 F. 4th at 829.

### B.  Plaintiff's Title VII and NMHRA claims fail as a matter of law

In interpreting the NMHRA, New Mexico courts have determined "'it is appropriate to rely upon federal adjudication for guidance.'" *See, e.g., Goodman v. OS Rest. Servs., LLC,* 2020-NMCA-019, ¶ 22, 461 P.3d 906 (internal citation omitted), *cert. dismissed*.  Because there is no substantive difference between state and federal law regarding Plaintiff's reverse sex discrimination claim here, the following analysis applies equally to both.

"To prevail on a Title VII employment discrimination claim, the applicant must prove that the employer's 'intent to discriminate based upon the plaintiff's protected class characteristics was the determining factor for the allegedly illegal employment decision.'" *Morgan v. Becerra,* No. 1:21-cv-1139-JHR-GBW, 2024 WL 4349371, at * 3 (D.N.M. Sept. 30, 2024) (*citing Ford v. Jackson Nat'l Life Ins. Co.*, 45 F. 4th 1202, 1213 (10th Cir. 2022).  "To prove this, the plaintiff must present either direct or indirect evidence of unlawful discrimination." *Id.* (*citing Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1166 (10th Cir. 2000)).  "Direct evidence plainly shows that an employment decision was reached for unlawful reasons, without need for inference or presumption." *Id.; see also Ford,* 45 F. 4th at 1213.  Such evidence consists of facts showing an existing policy that itself is discriminatory. *Heim,* 8 F. 3d at 1546; *Hill,* 2010 WL 11591040, at * 3.  There are not even allegations here of a facially discriminatory policy.

"Plaintiffs who lack direct evidence must use the three-step *McDonnell Douglas* burden-shifting framework." *Morgan,* 2024 WL 4349371, at * 3; *see also Ford,* 45 F. 4th at 1215.  Under

*McDonnell Douglas*, the plaintiff must first establish each element of a prima facie case. *Bekkem*, 915 F.3d at 1267.  The prima facie elements of a typical Title VII discrimination claim based on a disciplinary action are that: (1) the plaintiff belongs to a protected class; (2) was terminated for a policy or rule violation; (3) but was treated differently than similarly situated employees who violated policies or rules of comparable seriousness.  *Swain v. Normac Foods, Inc.*, 106 F.3d 414 (table), 1997 WL 12118, at * 1 (10th Cir. 1997).  Evidence of the elements to establish a prima facie case raises a presumption of discrimination.  *See Morgan,* 2024 WL 4349371, at * 3.  The employer must then rebut the presumption by articulating a legitimate, nondiscriminatory reason for the disciplinary action taken.  *See id.*  If the employer does this, the burden shifts back to the plaintiff to show a genuine dispute of material fact as to whether the employer's stated rationale was a pretext for unlawful discrimination. *Id.; see also Bekkem*, 915 F.3d at 1267.

However, reverse discrimination plaintiffs, such as men who claim they were discriminated against because of their sex, face an additional hurdle. *Morgan,* 2024 WL 4349371, at * 3; *Notari v. Denver Water Dep't*, 971 F.2d 585, 588–89 (10th Cir. 1992).  "Rather than showing membership in a protected class, male sex discrimination plaintiffs must present direct or indirect evidence to 'establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority'– that is, whose employment decisions are prejudiced against men." *Id.* (internal citation omitted).  "Failure to do so is a failure to make out a prima facie case under Title VII." *Morgan,* 2024 WL 4349371, at * 3.  In addition, a reverse discrimination plaintiff must show that similarly situated female employees accused of policy violations of comparable seriousness received different or more favorable treatment.  *Raleigh v. Snobird Corp.,* 172 F. 3d 63 (table), 1999 WL 104439, at * 2 (10th Cir. 1999).  If a male plaintiff cannot show that a female employee accused of similar policy violations received different or more

favorable treatment or that UNM is one of those unusual employers that discriminates against men, there is no prima facie case of reverse sex discrimination.  *Id.*

Therefore, to make out a prima facie case, a reverse discrimination plaintiff must establish: (1) evidence that the employer is one of those unusual ones that discriminates against the majority; (2) an adverse employment action; (3) disparate treatment among similarly situated employees. *Mattioda v. White*, 323 F.3d 1288, 1292–93 (10th Cir.2003) (explaining modification of first element of prima facie case in reverse race discrimination cases); *Notari*, 971 F.2d 585 (same). Importantly, evidence showing a differential in disciplinary actions taken against men versus women is insufficient, by itself, to support an inference of reverse discrimination in the Title VII context because to state a cognizable reverse sex discrimination claim, it is not enough for a plaintiff to merely show he was treated differently than similarly situated women.  *Adamson v. Multi Community Diversified Servs.,* 514 F.3d 1136, 1149 (10th Cir. 2008) (when a plaintiff is a member of a favored group, an inference of discrimination is only warranted if there is evidence that the defendant is that kind of unusual employer who discriminates against the majority).

Therefore, for example, raw disciplinary numbers showing disparate treatment without any additional context to show an employer is one of those unusual ones that discriminate against the majority does not create an inference of anti-male discrimination.  *Bergner v. Okla. Dept. of Health,* 2023 WL 9103129, at * 8 (N.D. Okla. July 11, 2023).[6]  Accordingly, to make out a prima

---

[6]Even if raw data existed to support Plaintiff's discrimination claim, which is disputed, to raise an inference of disparate treatment, raw numbers must be statistically significant for a court to consider them.  *See Thomas v. Metroflight, Inc.,* 814 F.2d 1506, 1510 n. 4 (10th Cir. 1987).  For example, a disparity of more than two standard deviations would undercut a claim that decisions were unbiased.  *Id.*  However, a showing of statistical significance requires expert testimony.  *Id.; see also Thomas v. Chao,* 65 Fed. Appx. 321, 324 (D.C. Cir. 2003) (affirming decision to exclude evidence "in the absence of an expert who could testify that the alleged underrepresentation was statistically significant"); *Hawkins v. Leggett,* 955 F. Supp. 2d 474, 492-93 (D. Md. 2013) (statical analysis unaccompanied by expert analysis insufficient to raise a discrimination inference).

facie case, Plaintiff here must point to evidence that UNM is one of those rare employers that discriminates against men and treated him differently than women accused of comparable policy violations. *See, e.g. Adamson,* 514 F.3d at 1149. There is no such evidence. First, the record is devoid of evidence that UNM is one of those rare employers that discriminates against men. Second, there is no evidence of any women accused of comparable policy violations (sexual assault giving rise to a hostile work environment) who were treated more favorably than Plaintiff. Therefore, Plaintiff cannot make out a prima facie case of reverse sex discrimination.

Even if Plaintiff could point to evidence to establish a prima facie case of reverse sex discrimination, he must also show that UNM's reason for terminating him was pretextual to overcome summary judgment. *See Bekkem*, 915 F.3d at 1267. As set forth *supra.*, there is no evidence of pretext to overcome UNM's legitimate, nondiscriminatory reasons for the employment actions taken. Therefore, Plaintiff cannot establish an employment discrimination claim as a matter of law. Accordingly, the Court should dismiss his Title VII and NMHRA claims.

### C.  The individual Defendants are not proper parties to this lawsuit

As set forth in the Introduction, *supra.,* the Court already dismissed the Title IX claim against the individual Defendants. Regarding Plaintiff's Title VII claim, it is well settled that Title VII only allows suits against employers and that individuals are not employers for purposes of Title VII. *See, e.g. Williams v. W.D. Sports, N.M., Inc.,* 497 F.3d 1079, 1083 n.1 (10th Cir. 2007) ("Under long-standing circuit precedent, supervisors and other employees may not be held personally liable under Title VII"); *Haynes v. Williams,* 88 F.3d 898, 901 (10th Cir. 1996) (Title VII liability is appropriately borne by employers); *Newsome v. County of Santa Fe,* 922 F. Supp.

---

Plaintiff here has not identified any expert who performed a statistical analysis and, therefore, cannot raise an inference of disparate treatment based on raw data.

519, 522 (D.N.M. 1996) (recognizing that even though Title VII defines an employer to include agents, most federal courts have nonetheless determined that there is no individual capacity liability under Title VII).  Because the individual Defendants cannot be personally liable, the Court should dismiss them.[7]  Therefore, the only proper party is BORUNM.

### D.    Plaintiff's claims for equitable relief fail

Plaintiff seeks injunctive relief to reverse the findings of the investigation, expunge his employment records reflecting his termination, and reinstatement.  *Complaint* at ¶ 202 (Doc. 1).  Plaintiff also requests declaratory relief to declare that UNM's investigative and sanctioning processes are unconstitutional.  *Id.* at ¶ 206.  As a preliminary matter, to the extent Plaintiff's Title IX and employment discrimination claims fail, his claims for equitable relief are moot.  *See Gutwein v. Taos County Detention Center,* No. 1:15-cv-672-RB-WPL, 2017 WL 3610532, at  * 9 (D.N.M. Feb. 24, 2017).  However, these claims for equitable relief also fail to state a claim.

Regarding the claim for injunctive relief, Plaintiff lacks standing.  To establish standing to seek injunctive relief, a plaintiff "must demonstrate a substantial risk that, in the near future, they will suffer an injury that is traceable to [the defendant] and redressable by the injunction they seek." *Murthy v. Missouri,* 603 U.S. 43, 49-50 (2024); *Buchwald v. UNM School of Medicine,* 159

---

[7]Although Plaintiff also sued the individual Defendants in their official capacities, doing so is the same as suing BORUNM.  *See Myers v. Okla. County Bd. of County Comm'rs,* 151 F.3d 1313, 1316 n.2 (10th Cir. 1998) (a civil rights suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same); *Felix v. City of Bloomfield,* No. 1:12-cv-125-JAP-RHS, 2013 WL 12328850, at * 3 (D.N.M. Nov. 12, 2013) (in a civil rights context, "courts routinely dismiss the official-capacity claims as redundant").  Although these cases apply to § 1983 claims and while the Court here dismissed Plaintiff's § 1983 claim, the same reasoning applies to a Title VII or NMHRA claim—because an official capacity lawsuit is the same as suing the employer, and because Plaintiff sued BORUNM, his claims against BORUNM and the individual Defendants in their official capacities are redundant.  Therefore, because the individual Defendants cannot be held personally liable and because the official capacity claims are redundant, there is no legal reason for the individual Defendants to remain as parties in this lawsuit.

F.3d 487, 493 (10th Cir. 1998) (a plaintiff's standing to seek injunctive relief cannot be based on allegations of past misconduct; rather, a plaintiff must allege future harm).  Numerous courts have applied this requirement and dismissed claims for injunctive relief in the context of employment termination cases.  "Plaintiff as a terminated employee lacks standing to request injunctive relief because he cannot establish a real or immediate threat of future harm." *Johnson v. Board of County Comm'rs,* No. 20-cv-244-WPJ, 2022 WL 1748488, at * 1 (E.D. Okla. May 26, 2022); *see also Young v. Colo. Dept. of Corrections,* No. 22-cv-00145-NYW-KLM, 2023 WL 1437894, at * 11 (D. Colo. Feb. 1, 2023) (collecting cases that a terminated plaintiff cannot seek injunctive relief because there is no way to show a likelihood of future injury, which is required to establish standing to seek injunctive relief); *Nagim v. Walker,* No. 10-cv-02973-WYD-KLM, 2011 WL 1542460, at * 2 (D. Colo. Mar. 8, 2011) (a terminated plaintiff has an adequate remedy at law and, therefore, cannot show he is facing immediate and irreparable harm from any current conduct); *Coles v. Delaware River & Bay Auth.*, No. 08-cv-636-GMS, 2010 WL 335612, at *5-6 (D. Del. Jan. 29, 2010) (denying motion for injunctive relief arising out of the termination of plaintiffs' employment; loss of wages and "injury to reputation and other injuries that are extant with a termination from employment ... do not establish the kind of injury necessary for the court to use its injunctive power"); *Rockefeller v. Bingaman,* 2006 WL 4061183, at  4 (D.N.M. Sept. 20, 2006) (recognizing that even if the court granted the injunction, the outcome would not remedy the plaintiff's termination from employment).  Therefore, Plaintiff's claim for injunctive relief fails.

The same is true for Plaintiff's request for declaratory relief challenging UNM's employment policies. *See Young,* 2023 WL 1437894, at * 11 (collecting cases that a plaintiff who is no longer employed lacks standing to challenge work place policies).  A declaratory judgment is a form of prospective relief.  *Collins v. Daniels,* 916 F.3d 1302, 1314 (10th Cir. 2019).  Where

prospective relief is sought, a plaintiff must be suffering a continuing injury or be under immediate threat of being injured in the future. *Tandy v. City of Wichita,* 380 F.3d 1277, 1283 (10th Cir. 2004). As set forth above, because Plaintiff was already terminated, there is no continuing injury or future threat of harm. Therefore, he cannot seek declaratory relief.

Based on the foregoing, Plaintiff's claims for equitable relief both fail. Therefore, the Court should dismiss them.

### IV.    Conclusion

The Court should dismiss all Defendants other than BORUNM because BORUNM is the only proper Defendant here. In addition, the Court should dismiss Plaintiff's claims for injunctive relief because they fail to state a claim. Further, Plaintiff's Title IX, Title VII, and NMHRA claims fail as a matter of law based on the undisputed facts. First, Plaintiff cannot make out a prima facie case under either Title IX or the other employment discrimination statutes. There is no direct evidence of anti-male discrimination or evidence that UNM is one of those atypical employers who discriminates against men, a historically favored class. Plaintiff also cannot make out an indirect case of anti-male bias under an erroneous outcome or selective enforcement theory.

Second, even if Plaintiff could establish a prima facie case of discrimination, either directly or indirectly, he cannot overcome the legitimate, non-discriminatory reasons for the employment actions taken to show they were merely a pretext for anti-male discrimination. None of Plaintiff's liability theories establish pretext. For example, procedural irregularities alone, especially those that are not extreme in nature, do not suffice to establish discrimination without being specifically tied to an anti-male bias. Likewise, absent any example of a woman accused of the same type of conduct as Plaintiff who UNM treated more favorably, Plaintiff cannot prove pretext. There is also no statistical basis upon which Plaintiff can prove discriminatory treatment, particularly since

Plaintiff has not identified an expert to provide any statistical analysis.  In addition, courts have expressly rejected Plaintiff's argument that public pressure to aggressively investigate sexual misconduct allegations creates an inference of anti-male bias.  Finally, credibility determinations alone do not establish an inference of gender bias.

Based on the foregoing, because all of Plaintiff's causes of action either fail to state a claim or fail as a matter of law, the Court should dismiss Plaintiff's Complaint and all the claims raised therein in their entirety.

WHEREFORE, Defendants respectfully request the Court to dismiss all remaining claims and all Defendants for the reasons set forth herein, and for such further relief as the Court deems appropriate.

Respectfully submitted,

STIFF, GARCIA & ASSOCIATES, LLC

By */s/ Philip Hunteman*
John S. Siff, Sr., Esq.
H. Nicole Werkmeister, Esq.
Philip Hunteman, Esq.
500 Marquette Ave., NW, Suite 1400
Albuquerque, NM 87102
(505) 243-5755
jstiff@stifflaw.com
nwerkmeister@stifflaw.com
phunteman@stifflaw.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

       I HEREBY CERTIFY that on this 20th day of December 2024, the foregoing was electronically filed through the Court's CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Travis G. Jackson, Esq.
Sarah K. Downey, Esq.
Jackson Loman Stanford & Downey, P.C.
201 Third Street NW, Suite 1500
Albuquerque, NM 87102
Phone: (505) 767-0577
Fax:        (505) 242-9944
E-Mail:      travis@jacksonlomanlaw.com
            sarah@jacksonlomanlaw.com
*Attorney for Plaintiff Michael S. Briggs*


*/s/ Philip Hunteman*
Philip Hunteman, Esq.