IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL BRIGGS,

    Plaintiff,

v.                                      Case No.:   1:20-cv-00651 KWR-JMR

THE UNIVERSITY OF NEW MEXICO, a
public university, THE BOARD OF
REGENTS OF THE UNIVERSITY OF NEW
MEXICO, GARNETT STOKES, individually
and in her official capacity, PAUL B. ROTH,
individually and in his official capacity,
DOROTHY ANDERSON, individually and
in her official capacity, LAURA VELE
BUCHS, individually and in her official
capacity, and KEVIN GICK, individually and
in his official capacity,

    Defendants.

## PLAINTIFF'S OPPOSED MOTION FOR LEAVE TO IDENTIFY STATISTICAL EXPERT

Pursuant to Fed. R. Civ. P. 16(b)(4) and the Court's prior scheduling orders (Docs. 55, 88), Plaintiff moves for leave to disclose a statistical expert to express opinions at trial regarding UNM's handling of complaints of sexual misconduct and sexual harassment. *Doe v. Univ. of Denver* ("Doe II"), 1 F.4th 822, 829–30 (10th Cir. 2021) (reversing grant of summary judgment because "procedural deficiencies in [a] sexual-assault investigation, combined with additional statistical evidence of sex bias," are sufficient to show an inference of sex discrimination under Title IX)."). As grounds therefore, Plaintiff states:

    1.     Plaintiff alleges that he was wrongfully terminated from his longstanding job at the University of New Mexico ("UNM") based on a biased investigation of a false report of sexual assault.

1

2. Plaintiff alleges that UNM terminated his employment in violation of Title IX of the Education Amendments of 1972 ("Title IX").

3. To succeed on a claim under Title IX, "a plaintiff must show: (1) that he or she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the program receives federal assistance; and (3) that the exclusion from the program was on the basis of [gender]." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189-1190 (10th Cir. 2020) ("*Doe I*") (quoting *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996).

4. "Title IX bars the imposition of university discipline where sex is a motivating factor in the decision to discipline." *Doe II*, 1 F.4th 822, 829–30 (quoting *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994)).

5. In *Doe II*, the Tenth Circuit held that a Title IX plaintiff can demonstrate gender bias by statistical disparity in the gender make up of a university's sexual misconduct investigations, findings, and discipline. *Id.*, 1 F.4th 822, 829–30 (reversing grant of summary judgment because "procedural deficiencies in [a] sexual-assault investigation, combined with additional statistical evidence of sex bias," are sufficient to show an inference of sex discrimination under Title IX).

6. On October 4, 2023, Plaintiff served requests for production on Defendants (collectively referred to as "UNM") seeking, *inter alia*, records and information relating to past complaints to UNM alleging sexual violence, sexual misconduct, and sexual harassment.

7. On December 1, 2023, UNM objected on multiple grounds, including on grounds that it was required by law to protect students' confidential information under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. 1232g(a)(4).[1]  UNM objected despite

---

[1] *See* UNM Objections to Plaintiff's RFP No. 18 (attached as Exhibit 1).

the prior entry of a Stipulated Confidentiality Order providing a mechanism for UNM to protect responsive records from public disclosure (Doc. 63).

8. UNM also objected on grounds of burden claiming that "Defendants' records show that from 2015 through the end of 2020, there was 3,501 reports to OEO, of which 1,837 were reports of sexual harassment or misconduct." (Ex. 1). UNM admitted that "OEO does not track the gender of the complainant [or] respondent." *Id.* UNM stated that "Defendants will supplement this response if Plaintiff's counsel is willing to narrow and/or clarify the scope." *Id.*

9. The parties then met and conferred, during which time Defendants requested that Plaintiff issue a subpoena for such records rather than seek them through a request for production because, "[p]ursuant to a lawfully issued subpoena, federal regulations allow BORUNM to release education records protected by FERPA without written consent" so long as BORUNM "makes a reasonable effort to notify the parent or eligible student of the order or subpoena in advance of compliance, so that the parent or eligible student may seek protective action." Defendant's Motion To Quash Or Modify Subpoena at 3, ¶ 11 ("UNM Motion to Quash") (Doc. 93) (citing 34 C.F.R. § 99.31(a)(9)(i) and (ii)).

10. To cooperate with UNM's efforts to protect confidential student information and comply with FERPA, Plaintiff issued a subpoena on for the same information on December 5, 2023 (Doc. 93-1) (the "Subpoena").

11. On December 20, 2023, UNM then moved to quash or modify Plaintiff's Subpoena (Doc. 93) on multiple grounds, including UNM's continuing assertion that producing responsive records would be burdensome. *See* UNM Motion to Quash at 5, ¶ B (Doc. 93). UNM reported that: "3,501 OEO complaints [were] filed from 2015 to 2020, of which 1,227 were related to sexual

3

violence and/or sexual misconduct. Plaintiff's Subpoena as written appears to request documents and communications regarding all 3,501 OEO complaints." *Id.* at 5, ¶ 14(B) (Doc. 93).

12. UNM also argued that producing its entire file for each complaint would require production of "over 122,700 pages of documents, not including the requested communications, which would require an extensive email search going back to 2015." *Id.* at ¶ 4(C).

13. UNM also argued that, even if such discovery was permitted, it would need significant time collect, review, and produce such records, and to notify impacted students before such materials were produced in order to comply with FERPa. *Id.* at 4, ¶ 12 (Doc. 93) ("UNM needs sufficient time to identify which documents Plaintiff seeks under this subpoena are protected by FERPA and the students named in those documents, to provide written notification to those students or parents, and to provide those students or parents sufficient time for the student to seek protective action.").

14. In response to Defendants' Motion to Quash, Plaintiff again met and conferred with Defendants, and agreed:

    (a) to limit the scope of the Subpoena "by subject matter, to OEO claims of 'sexual assault,' including inappropriate touching, non-consensual sexual relations, and sexual violence";[2]

    (b) that UNM need not produce the entire file or all communications relating to each such complaint, but that UNM could instead limit the production of records to certain core

---

[2] *See* UNM Reply Br. at 2 (Doc. 104) ("The parties have agreed to limit such production . . by subject matter, to OEO claims of "sexual assault," including inappropriate touching, non-consensual sexual relations, and sexual violence.").

records for each file (e.g. complaint, a "Gender Identification Document,"[3] PLOD, FLOD, appeal, and discipline);[4]

        (c)    to limit the applicable time period to January 1, 2017, to December 31, 2022;[5]

        (d)    to extend the time for UNM to produce responsive records so that it could conform with any notification requirements under FERPA.

15.    Despite Plaintiff's further agreements to limit the scope of production by subject matter, time, and document type, UNM maintained its objection to the production on grounds of burden arguing that: (1) 1,701 "sexual assault" complaints were filed with OEO during that more limited timeframe; (2) if all 1,701 files were ordered produced, approximately 1300 students would have to be notified under FERPA; and (3) both the notification process for and production of all 1,701 files would create an undue administrative burden on UNM. Reply Br. at 3-6 (Doc. 104).

16.    Importantlly, UNM noted that, "[o]f the 1,701 [sexual assault] cases, only 130 were investigated." Reply Br. at 5 (Doc. 104).

17.    On April 10, 2024, the Court held a hearing on UNM's Motion to Quash and ultimately determined that, under *Doe II*, Plaintiff was entitled to discovery of UNM's files regarding uninvestigated cases but, based on UNM's objection, limited that production to reduce the administrative burden claimed by UNM. Rather than require that UNM produce all files, the Court ordered that: (1) UNM produce the files for the 130 cases <u>investigated</u> by OEO; and (2) that Plaintiff narrows its request to 250 of the remaining <u>uninvestigated</u> cases. *See* Clerk's Minutes at 2, 3:28 (Doc. 109).

---

[3] "A record relating to a Complaint that is sufficient to identify the gender of the complainant and respondent."
[4] *See* Response Br. at 5-6 (Doc. 101); Reply. Br. at 2 (Doc. 104).
[5] Reply. Br. at 2 (Doc. 104).

18. On April 11, 2024, the Court entered an Order Granting in Part [UNM's] Motion to Quash Subpoena (Doc. 110) ("[UNM] is ordered to produce the files for all the subject complaints that were fully investigated within the parties' stipulated timeframe, which is approximately 130 cases. Plaintiff is ordered to further narrow his request for files of uninvestigated complaints to 250 cases."). The Court initially ordered that UNM produce the responsive files by August 9, 2024. By the time UNM was required to produce the files (originally requested by Plaintiff in October 2023), the discovery deadline had long since passed,[6] as had the expert disclosure deadline.[7]

19. The Parties subsequently informed the Court that (a) information then-available to Plaintiff (a spreadsheet provided by UNM) did not identify or distinguish between investigated vs. uninvestigated cases, thus it was impossible for Plaintiff to identify 250 uninvestigated files to be produced by UNM; and (b) that the parties were already meeting and conferring to resolve the issue. Plaintiff requested that the Court extend the time for Plaintiff to identify the 250 "uninvestigated cases" to be produced until May 17, 2024. *See* Unopposed Motion to Extend time for Plaintiff to Identify UNM Complaint Files (Doc. 111).

20. In early August 2024, counsel for Defendants informed counsel for Plaintiffs that UNM had encountered various issues relating to the production of both the investigated and uninvestigated files. (Doc. 115). Defndants requested that Plaintiff agree to extend the time for UNM to produce the files by 60 days, a request that Plaintiff promptly consented to. (Doc. 113). Plaintiff has promptly agreed to every extension ever by Defendants.

---

[6] *See* Stipulated Order Modifying Certain Pretrial Deadlines (Doc. 97) (setting April 11, 2024 as the date for the termination of discovery).
[7] *See* Scheduling Order entered by Judge Browning (Doc. 55) (initially setting expert disclosure deadline for July 3, 2023).

21. The Court ultimately granted UNM a 60-day extension until October 8, 2024, to produce the investigated and uninvestigated files to Plaintiff.

22. Roughly a year after the files had been requested (10/4/23), and roughly six months after the close of discovery and Court's Order to produce them (4/11/24), UNM ultimately produced 371 files in September and October 2024. UNM's production was voluminous, and it was also produced at the same time that UNM produced significant amounts of other records and information responsive to Plaintiff's Subpoena (e.g. records relating to Peer Review Hearings and appeals to UNM's President).

23. Plaintiff immediately and diligently commenced review of the 371 files produced by UNM, which ultimately included 133 files that UNM marked as "Investigated" and 238 as "Uninvestigated." Review and analysis of those files, and the other records produced by UNM, was an enormous undertaking that required a significant amount of time and resources.

24. After producing these voluminous records, Defendant filed an extensive summary judgment motion seeking to dispose of all of Plaintiff's claims, including Plaintiff's Title IX claim, on grounds that there was no evidence of gender bias. (Doc. 129). Defendants' filing of the summary judgment motion required that Plaintiff simultaneously review/analyze the records recently produced and also substantively respond to Defendants' summary judgment motion.

25. As more fully described in Plaintiff's response to UNM's motion for summary judgment, review of UNM's handling of complaints of sexual assault confirms that UNM discriminated against male respondents compared to female respondents. *See* Allen Decl. at ¶¶ 2-9 (Doc. 149 at Ex. 1); Briggs. Decl. at ¶¶ 1-4 (Doc. 149 at Ex. 3). The 371 files produced by UNM include 269 male and 102 female respondents. Of the 269 complaints made against male respondents, 126 (or 46.9%) were investigated by OEO. By contrast, of the 102 complaints made

7

against female respondents, only 7 (or 6.9%) were investigated by OEO. Male respondents were investigated by UNM at a rate 6.8 times greater than female respondents.

26.     UNM also discriminated against male respondents with respect to findings of policy violations. Of the 269 complaints made against male respondents, 78 (or 29%) resulted in a finding of a policy violation against the male respondent. By contrast, of the 102 complaints made against female respondents, only 1 (or <1%) resulted in a policy violation against a female respondent. Male respondents were found to have violated UNM policy at a rate 29.6 times greater than female respondents.

27.     The UNM files also confirm that male respondents were disciplined more severely than female respondents. Of the 371 complaints, 52 resulted in the most severe disciplinary actions (termination, sanctions, suspension, or expulsion) against male respondents. Of those 371 complaints – 102 of which were made against female respondents – only one female respondent received any discipline (expulsion). The indisputable evidence is that UNM investigates, finds against, and disciplines male respondents at significantly higher rates than female respondents.

28.     The Tenth Circuit has held that statistical evidence of this type is sufficient for a reasonable jury to find that "sex was a motivating factor in the University's disciplinary decision." *Doe II*, 1 F.4th at 829–30 (cites omitted).

29.     To get around *Doe II* and the indisputable statistical evidence of gender bias, UNM has now filed a preemptive Motion to Strike seeking to exclude whole categories of evidence, including what UNM argues is "inadmissible statistical evidence." *See* UNM Defendants' Motion To Strike Plaintiff's Summary Judgment Evidence (Doc. 23). Plaintiff will address the merits of UNM's Motion to Strike in his response, but highlights here that UNM argues that "Plaintiff never

identified Allen as an expert witness . . . in accordance with the Court's deadline for disclosure of expert witnesses." *Id.* at 4 (Doc. 23). This argument fails for at least two reasons.

30. First, Mr. Allen's declaration does not express any expert opinion at all – he simply counts the number of sexual assault complaints that UNM investigated against men vs. women, and calculates the relative percentages (complaints investigated / complaints received). Mr. Allen does the same with respect to UNM"s findings of policy violations, and also for discipline imposed by UNM. UNM admits that Allen simply engaged in "basic arithmetic." *Id.* at 8. UNM argues that "Allen points to no evidence outside of the statistics." *Id.* at 7. Mr. Allen's declaration is simply a statement of fact based on personal knowledge of his review of records belatedly produced by UNM. Mr. Allen's declaration expresses no opinions at all, much less opinions based on specialized or technical knowledge.

31. Second, UNM's argument wholly ignores that UNM did not produce the files at issue until roughly a year *after* they had been requested (10/4/23), and roughly six months *after* the close of discovery and the Court ordered to UNM produce them (both 4/11/24), and *after* Plaintiff consented and the Court allowed UNM additional time to produce the records in October 2024. UNM only produced the records two months before UNM filed its summary judgment motion, prejudicing Plaintiff's ability to substantively respond to the dispositive motion – not the other way around. Plaintiff quite obviously could not have identified Mr. Allen as a witness before UNM produced the records in late 2024. UNM cannot fairly delay production of records until just before the summary judgment deadline and then attempt to exclude testimony about those records as untimely. If such testimony is untimely, it is because UNM's production was untimely. Plaintiff should not be prejudiced by the timing of UNM's production, and should be allowed to fairly present evidence and testimony about UNM's handling of complaints of sexual assault.

32. In its Motion to Strike, UNM goes on to argue that: "Plaintiff has never sought leave of Court to extend the expert deadlines" *Id.* at 4. Again, Plaintiff disputes that Allen's declaration expresses expert opinions, but to directly address any potential challenge, and to allow Plaintiff to fairly present testimony and evidence relating to UNM's belatedly produced complaint files, Plaintiff respectfully requests that the Court grant Plaintiff leave to disclose an expert in statistics (Dr. Allen) to present testimony, including opinions, about UNM's handlings of sexual assault complaints.

33. Under *Doe II*, statistical evidence of UNM's handling of sexual assault claims is directly relevant to Plaintiff's Title IX claims.

34. Plaintiff timely sought discovery of records relating to UNM's handling of sexual assault claims in October 2023. Plaintiff repeatedly conferred in good faith with UNM to limit the scope of its request in time, category, substance, document type, and repeatedly consented to allow UNM additional time requested to produced the records. Plaintiff's ability to present critical evidence should not be prejudiced by Defendants' delayed production of the records at issue.

35. Fed. R. Civ. P. 26(a)(2)(D) requires that "a party must make [expert] disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made: (i) at least 90 days before the date set for trial or for the case to be ready for trial."

36. Because of the delay in UNM's production of the underlying records, it was impossible for Plaintiff to disclose a statistical expert to express opinions about UNM's handling of sexual assault complaints by the deadline set forth in original scheduling order.

37. There is currently no trial setting and allowing Plaintiff to disclose a statistical expert to testify at trial will not delay any other deadlines currently set in this case.

38. The request is discretely limited to the disclosure of a statistical expert, and there remains sufficient time for Plaintiff to make the appropriate disclosures, allow UNM to depose Plaintiff's proposed statistical expert, and for UNM to identify a rebuttal expert prior to trial.

39. "The District Court has wide discretion in its regulation of pretrial matters." *Si–Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1514 (10th Cir.1990); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010) ("Discovery and scheduling are matters within the district court's broad discretion."); *King v. PA Consulting Group*, Inc., 485 F.3d 577, 591 (10th Cir. 2007) (the court has broad discretion to manage the progression of discovery). Scheduling orders, however, "may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4).

40. Fed.R.Civ.P. 6(b) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect."

41. "The Tenth Circuit has held that the concepts of good cause, excusable neglect, and diligence are related." *Scull v. Mgmt. & Training Corp.*, No. CIV 11-0207 JB/RHS, 2012 WL 1596962, at *6 (D.N.M. May 2, 2012); *see also In re Kirkland*, 86 F.3d 172, 175 (10th Cir.1996).

42. "[A] finding of excusable neglect under Rule 6(b) requires both a demonstration of good faith by the parties seeking the enlargement and also it must appear that there was a reasonable basis for not complying within the specified period." *In re Four Seasons Sec. Laws Litig.*, 493 F.2d 1288, 1290 (10th Cir.1974); *see also Putnam v. Morris*, 833 F.2d 903, 905 (10th Cir.1987) ("[S]ome showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified is normally required.") (quoting *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305 (5th Cir.1985)).

11

43. In determining whether a movant has shown excusable neglect, a court should consider the circumstances, including: (i) the danger of prejudice to the opposing party; (ii) the length of the delay and its potential impact on the judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith. *See Schupper v. Edie*, 193 F.App'x 744, 746 (10th Cir.2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993) (stating factors in the context of Bankruptcy Rule 9006(b)); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1494 (10th Cir.1995) (applying the *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.* excusable neglect factors to the rule 6(b) context)). The Tenth Circuit has stated that the reason for delay is an important, if not the most important, factor in this analysis. *See Hamilton v. Water Whole Int'l Corp.*, 302 F.App'x 789, 798 (10th Cir. 2008) (unpublished) (citing United *States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004).

44. For all of the reasons discussed *supra*, Plaintiff respectfully submits that all of these factors weigh in favor of allowing Plaintiff to disclose a statistical expert.

45. Prior to filing this Motion, Plaintiff requested that Defendants consent. Defendants had previously indicated that they were unlikely to agree to allow Plaintiff to identify a statistical expert, but they have not directly responded to Plaintiff's request for consent to this motion. Plaintiff presumes the motion is opposed.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court grant plaintiff leave to disclose an expert in statistical analysis to express opinions at trial about UNM's handling of complaints of alleged sexual assault and sexual misconduct. More specifically, Plaintiff requests that the Court: (a) permit Plaintiff to disclose a statistical expert in accordance with Rule 26(a)(2) within two weeks of an order granting such leave; (b) allow Defendants to conduct the deposition

of Plaintiff's expert within two weeks of such disclosure; (c) allow Defendants to identify and disclose any rebuttal expert within thirty (30) days of Plaintiff's disclosure, and (d) allow Plaintiff to conduct a deposition of any expert disclosed by Defendant within two weeks of any such disclosure by Defendants.

JACKSON LOMAN DOWNEY &
STEVENS-BLOCK, P.C.

By: */s/ Travis G. Jackson*
    Travis G. Jackson
    Sarah K. Downey
201 Third St. N.W., Ste. 1500
Albuquerque, NM 87102
Telephone: (505) 767-0577
Email: travis@jacksonlomanlaw.com
Email: sarah@jacksonlomanlaw.com
 *Attorneys for Plaintiff Michael Briggs*

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that March 11, 2025, I filed the foregoing motion through Court's electronic filing system, which caused all counsel of records to be servied electronically, including the following counsel of record:

    John S. Stiff
    STIFF, GARCIA & ASSOCIATES, LLC
    500 Marquette Ave., NW, Suite 1400
    Albuquerque, New Mexico 87102
    Telephone: (505) 243-5755
    Email: jstiff@stifflaw.com
    Counsel for Defendants

By: */s/ Travis G. Jackson*
    Travis G. Jackson